## THE CITY OF CHICAGO

*v.*

## THE CHICAGO UNION TRACTION COMPANY.

*Opinion filed October 25, 1902—Rehearing denied December 3, 1902.*

1. STREET RAILWAYS—*company does not occupy same position as an abutting owner.* A street railway company does not occupy the position of an owner of property abutting upon the street, and hence it does not follow, because the burden of keeping a portion of the street clear of snow, dirt and other accumulations cannot be imposed upon an abutting owner, that the company cannot be required to clean the portion of the street occupied by its tracks.

2. SAME—*city cannot, by ordinance, deprive itself of powers concerning public health and safety.* A city cannot, by an ordinance granting a street railway franchise, deprive itself of the power nor relieve itself of the duty of enacting and enforcing ordinances necessary for the preservation of the health, safety and comfort of the public; nor can the company, by any contractual terms of the ordinance, exempt itself from control of the city in such respect.

3. SAME—*a city has power to require company to keep portion of street clean.* In the interest of the public health, safety and comfort a city has power, by uniform ordinance, to require street railway companies to remove all snow, dirt or other accumulations from so much of the surface of the streets as is occupied by their tracks. (*Gridley* v. *Bloomington*, 88 Ill. 554, and *Chicago* v. *O'Brien*, 111 id. 532, distinguished.)

4. SAME—*a street railway is subject in a higher degree to municipal control than a railroad.* The business and property of a street railway company are impressed with a public interest, and it may be subjected to municipal regulations, in the interest of the public at large, of a greater scope than may be a railroad company exercising its franchise upon its own road-bed.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

CHARLES M. WALKER, Corporation Counsel, HENRY SCHOFIELD, and CLARENCE N. GOODWIN, for plaintiff in error:

A legislative enactment is not void unless in conflict with some constitutional provision. *Munn* v. *People*, 69 Ill. 80; *Munn* v. *Illinois*, 94 U. S. 113.

All property is held subject to such burdens as may be imposed by the legislative authority for the promotion of the health, comfort and convenience of the public and general welfare of the community. Such enactments violate no constitutional provision. *Barbier* v. *Connelly*, 113 U. S. 27; *Slaughter-house cases*, 16 Wall. 36; *Cemetery Ass.* v. *Railway Co.* 121 Ill. 212; *Railroad Co.* v. *People*, 143 id. 435; *Culver* v. *Streator*, 130 id. 238.

The ordinance in question only requires the street railway companies to keep their own property in a sanitary condition. *Chicago* v. *Barr*, 41 Ill. 306; *Railway Co.* v. *Chicago*, 176 id. 501; *Railway Co.* v. *Chicago*, 90 id. 578; *Railway Co.* v. *Railway Co.* 87 id. 317.

Street railway companies may be compelled to remove snow from their tracks. *McDonald* v. *Railway Co.* 74 Fed. Rep. 104; *Power* v. *Railway Co.* 54 Mich. 496; *Dixon* v *Railway Co.* 100 N. Y. 170; *Railway Co.* v. *New York*, 1 N. Y. Supp. 646.

James W. Duncan, Ira C. Wood, and Frank E. Harkness, (W. W. Gurley, and John A. Rose, of counsel,) for defendant in error:

The city has power to raise funds by general taxation for municipal purposes. Among those purposes is that of cleaning streets. City and Village act, sec. 63.

It is the duty of the city to keep the streets of the city clean and in good repair. *Bloomington* v. *Bay*, 42 Ill. 503; *Chicago* v. *Seben*, 165 id. 379.

Where the city has power to do an act which concerns public interest, the execution of the power may be insisted upon as a duty. Prentice on Police Power, p. 227, and cases cited.

The city has power to grant rights to construct and operate street car lines in the public streets and provide the terms on which such grant is made. When such a grant is made and accepted it becomes an inviolable contract, subject only to such additional control as falls

within the police power.  *Railroad Co.* v. *Bloomington,* 76 Ill. 447; *Railroad Co.* v. *Chicago,* 178 id. 339; *People* v. *Railroad Co.* 118 id. 113; *Chicago* v. *Sheldon,* 9 Wall. 50; *Billings* v. *Chicago,* 167 id. 337; *Parmalee* v. *Chicago,* 60 id. 267.

Street car companies, and corporations in general, are under the same burdens and owe the same duties to the public which can be rightfully required of natural persons, save as to the special requirements contained in the charter and operating ordinance.  *Railroad Co.* v. *Bloomington,* 76 Ill. 147.

A public burden cannot be imposed upon a private individual, except as authorized in cases to exercise the right of eminent domain or by virtue of proper proceedings to enforce special assessment or special taxation. *Chicago* v. *Larned,* 34 Ill. 203; *Gridley* v. *Bloomington,* 88 id. 554; *State* v. *Railroad Co.* 86 Mo. 263; *Chicago* v. *O'Brien,* 111 Ill. 532; *State* v. *Jackman,* 42 L. R. A. 438; *Chicago* v. *Blair,* 149 Ill. 310.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The city of Chicago instituted an action before a justice of the peace against the defendant in error company to recover the fines provided by section 1717 of the revised code of ordinances of said city for the alleged violation of the provisions of section 1716 of the code.  The traction company was adjudged guilty by the justice of the peace and a fine of $100 was assessed against it.   In the criminal court of Cook county, to which the traction company brought the cause by an appeal, judgment was entered finding the traction company not guilty.   The city has sued out this writ of error to bring the record into this court for examination.

The ordinances upon which the prosecution is based are as follows:

"1716. The several street railway companies at any time operating railroad tracks on and along the surface of any of the streets, avenues or alleys of the city of

Chicago are hereby, respectively, required to remove all dirt, snow and other accumulations from so much of the surface of each street, avenue or alley now or hereafter containing any of their railway tracks, as lies between the two outermost rails of such tracks, and also from such additional surface, in width, as may be prescribed in any ordinance relating to or affecting any such street, avenue or alley, and shall, respectively, clean such portions of said street, avenue or alley and remove entirely from and out of such street, avenue or alley all such dirt, snow and accumulations at least once in each week, and as much oftener as the commissioner of public works shall, in writing, direct; such dirt, snow and accumulations to be removed and disposed of in accordance with the ordinances of the city in relation to the removal of street cleanings, and subject to the rules and regulations of the department of public works in that behalf.

"1717. Any street railway company operating a street railway upon or along the surface of any street, avenue or alley in the city of Chicago which shall refuse or neglect to clean any part of a street, avenue or alley, as required by the last preceding section hereof, shall, upon conviction thereof, be fined in a sum not less than $50 nor more than $200 for each and every case of such refusal or neglect."

The alleged violation of the ordinance consisted in the refusal of the traction company to remove the dirt and other accumulations lying on the surface of the street between the two outermost rails of the track of its railway in Kinzie street. That the defendant in error company so refused and failed to obey the ordinance was conceded. The judgment of acquittal proceeded upon the view urged by the traction company that the ordinances were void.

The defendant in error company is a corporation organized and existing under and by virtue of the laws of the State of Illinois, and is engaged in the occupation

and business of carrying passengers for hire in street cars propelled by electricity, and otherwise, in the city of Chicago. Its tracks were laid in Kinzie street by virtue of an ordinance adopted by the city council of the city on the 14th day of March, 1887, authorizing the North Chicago Street Railway Company, its successors and assigns, to construct and maintain a double track street railway in said Kinzie street and operate the same by electricity conveyed by overhead wires. The defendant in error company is the successor of the said North Chicago Street Railway Company. It has constructed and maintains a double track railway on Kinzie street, in the city of Chicago, from Market to State street, and operates its street cars thereon by electric power.

It was stipulated that ever since the first day of July, 1899, the said defendant, the Chicago Union Traction Company, has had possession and control of said street car tracks on Kinzie street, and has run thereon street cars for the conveyance of passengers, operated by electric power only, by means of an overhead wire, and that during the week beginning Sunday, August 6, 1899, and ending Saturday, August 12, 1899, the said defendant did not remove, and refused, on demand, to remove, from the said street car tracks on Kinzie street the dirt and other accumulations lying on the surface of said street between the two outermost rails of said tracks, contrary to the form of said ordinance of April 8, 1897; that said Kinzie street is a public street in the city of Chicago, the fee title to the soil of which street is in the said city of Chicago for the use of the public as a street.

The sole question presented is, whether the city possessed power to adopt and enforce the ordinance. The position of counsel for the defendant in error company is that the ordinance is void, and that contention met the view of the criminal court.

There was testimony to the effect that the presence of the rails of a street railway track upon a street causes

the dirt to accumulate in the portion of the street between the rails. The tendency is for dirt to gravitate towards the sides of the street when there are no rails to prevent it; that this tendency of dirt to gravitate toward the sides of the street is aided by the elements, and that little brooming is required to keep the center of streets clean if there are no rails upon them, but rails retain the dirt in the center of the street; that the presence of the tracks in Kinzie street added to the difficulty in cleaning the portion of the street outside the rails; that it took longer to clean an entire street with rails than it took to clean a street where there were none,— three times as long on the portion of Kinzie street in question; that Kinzie street was paved between the rails with granite and outside with cedar blocks, and has a flat crown between the rails and sloped from the outside rails to the gutter; that the dirt came from horse droppings, from excavation wagons, coal wagons and ordinary wear and tear; that street accumulations have an effect upon the general health, through dust, in two ways: one through the presence of irritating particles, which are injurious in this, as being irritants to the respiratory passages and the eyes, and also to the presence of pathogenic bacteria which are in and upon the particles of dust which are in the street. As to these points there was no countervailing proof.

It appeared from this testimony the health and comfort of the people required the dust and other accumulations should be removed from that portion of Kinzie street described in the ordinance. There is, it is conceded, a general police power possessed by the city by which the traction company and all persons, natural or artificial, may be subjected to such reasonable restrictions and regulations as are found to be proper and requisite to secure the health, comfort and convenience of the people. The ordinance, it is urged by counsel for the city, should be sustained as a legitimate exercise of the police

power. It is insisted by the traction company it is the duty of the city to keep the streets of the city clean and in good repair; that the city has power to raise funds for that purpose by general taxation; that the public interest is concerned in the matter of cleaning and repairing the streets, and that the execution of the power to raise the necessary funds to clean and repair the streets by general taxation is a duty devolving upon the city, and that it cannot lawfully lay the burden of the work of cleaning and repairing the portion of Kinzie street in question on the traction company, as is proposed to be done by this ordinance; that the ordinance is void for the reason it casts a public burden upon the traction company and discriminates against the traction company, and is a perversion of the police power.

It is clear the city could not, by virtue of the police power or otherwise, require the defendant in error company to clean and repair the street if the real purpose is merely to shift the public burden from itself to the company. In *Gridley* v. *City of Bloomington*, 88 Ill. 554, we held invalid an ordinance which imposed a fine upon any one who should permit snow to remain on the sidewalk abutting premises occupied or owned by him, longer than a period of six hours after it ceased to fall, or if the cessation is in the night time, then longer than six hours after sunrise on the next morning, for the reason, as there said, "the sidewalk, as was declared in the case cited, is as much a public highway, free to the use of all, as the street itself, and, upon principle, it follows the citizen cannot be laid under obligations, under our laws, to keep it free from obstructions in front of his property at his own expense any more than the street itself, either by the exercise of the police power, or by fines and penalties imposed by ordinance, or by direct legislative action." In *City of Chicago* v. *O'Brien*, 111 Ill. 532, we held the city had not the constitutional power to require the owner or occupant of premises to keep the sidewalk and gutters

in front thereof free from snow and ice, or to sprinkle the same with ashes or sand where the snow and ice can not be removed without injury to the pavement, and inflict a fine on him for a neglect or failure to do so, and declared the principle that "a purely public burden can not be laid upon a private individual, except as authorized in cases to exercise the right of eminent domain, or by virtue of proper proceedings to enforce special assessments or special taxation."

The doctrine of these cases is unquestionably sound, but we do not assent to the view pressed upon us by counsel for the defendant in error company that they are decisive of the validity of the ordinance here under consideration. The defendant in error company does not occupy the position of the owner of property abutting upon a street. The owner of property abutting on a street has no interest in the street of the city, as a street, other than that possessed by every other citizen. He may be required, by way of special assessments or special taxation laid in pursuance of law, to make special contributions to defray the cost of constructing a sidewalk or improving the street, but this is upon the theory the value of his property is enhanced thereby. The burden, however, of keeping the sidewalk or street clear of snow, ice and other accumulations is a public burden, and no obligation is imposed upon the lot owner to perform that which it is the duty of the municipality, as the representative of the public, to perform. The lot owner has no special right, benefit or interest in the street in front of his premises. The defendant in error company has, however, been granted a special privilege to occupy the street with its rails, girders, poles or posts and wires, etc., and to operate its cars along its tracks so laid in the street. Horsemen and drivers of vehicles must yield the right of passage to its cars along and upon its tracks in the streets, as we have explained in *North Chicago Electric Railway Co.* v. *Peuser,* 190 Ill. 67. It has acquired privi-

leges in the street which other persons, natural or artificial, do not possess.   It actually occupies a portion of the street in a manner which would not be permitted without the aid of an ordinance.   It has a qualified right of occupancy, and to that extent a property interest, in a portion of the street, and is authorized to transact its business for its own gain on the public street.   It sustained a relation to the street and to the city entirely distinct from that of an abutting property owner, and it does not follow that the defendant in error company can not be required to clean that portion of the street occupied by its tracks simply because an abutting property owner cannot be required to clean that portion of the sidewalk or street which is in front of his premises.   The permission or license given the defendant in error company to use the street did not operate to deprive the city of the general power of control over the street delegated to the municipality by the General Assembly of the State. The license and privilege enjoyed by the defendant in error company are in subordination to the general power so residing in the city.   The traction company, in virtue of the special privileges granted, has a qualified right of occupancy of that portion of the street between the outermost rails of its two lines of track which are laid in the street.   The evidence shows that portion of the pavement of the street, for the convenience of the company, has been constructed differently by the company from what it otherwise would have been laid; that on that portion of the street covered by the tracks of the street railway the pavement has been laid flat, thus giving the surface of the street a flat crown of the width of sixteen feet, when, but for the tracks of the railroad, the pavement would have been laid with a slope from the center of the street to the gutter upon either side, and that the rails of the tracks prevent the filth of the street from reaching the gutters.   It further appeared the tracks of the railway interfere with the work of cleaning both that

portion of the street within the tracks and also that portion of the street between the outermost rails of the tracks and the gutters; that as much time was required to clean the portion of the street outside the tracks as would be required to clean the entire surface of the street if the railroad tracks were not there. All of these things must be considered in determining as to the reasonableness, necessity and justice of the requirements of the ordinance. .True, the dirt and accumulations to be removed (so far as the evidence bears upon that question) were not brought by the traction company on that portion of the street occupied by its tracks, but it does appear its rails and road-bed, and the manner in which the crown of the street has been constructed for its convenience, tended to retain the dirt and filth there and to render it more difficult and expensive to remove the same, and also to make it more expensive to clean the street outside the tracks. The public health and comfort required the street should be cleansed of the dirt and filth which "accumulated" on the pavement between the tracks of the railway and about the rails of such tracks, and the exercise of the police power to that end devolved upon the city as a duty.

It does not seem unreasonable that the city should require the traction company to clean and render healthy that portion of the street occupied by the tracks of the road, under the circumstances of the case. In order to secure the public health and comfort the property of individuals and corporations may alike be subjected to reasonable restrictions and burdens. It does not appear unreasonable that the traction company, having, in the exercise of the special privilege enjoyed by it of using the street, contributed to the unsanitary condition which injuriously affects the public health and comfort, should be required to aid in removing such conditions. The privilege enjoyed by the defendant in error company to maintain its railway in the street and operate its cars

thereon is to be exercised in the interest of the public,— it was to serve the public that the privilege was granted to it. Its business and property are impressed or affected with a public use. It may therefore be subjected to municipal regulations of a greater scope, in the interest of the public at large, than that of a railroad company exercising its franchises on its own road-bed. (*Cape May Street Railway Co.* v. *Cape May*, 59 N. J. L. 396; *Charlotte, etc. Railroad Co.* v. *Gibbs*, 142 U. S. 386.) Ordinances have been upheld which required street railway companies to keep the street between the rails of their tracks in repair, and which regulated the common use of the streets for street railway and ordinary travel, (*North Hudson Railroad Co.* v. *Hoboken*, 12 Vroom, 71); to make the railroad tracks of street railway companies located in a street to conform to the requirements of the ordinance, so as to enable wagons, carriages and other vehicles to pass over tracks without inconvenience or danger, (*North Chicago City Railway Co.* v. *Town of Lake View*, 105 Ill. 183); to remove snow from the street, (*Broadway Railroad Co.* v. *Mayor*, 49 Hun, 129); prohibiting the use of sand, saltpeter or salt on the tracks of a street railway, (*Dry Dock Railroad Co.* v. *Mayor*, 47 Hun, 221; *Traction Co.* v. *Elizabeth*, 58 N. J. L. 520); and ordinances to compel cleaning and sprinkling of the tracks of street railways have been not infrequently upheld as valid. (Booth on Street Railways, sec. 230; 23 Am. & Eng. Ency. of Law,—1st ed.—p. 999; *City, etc. Railroad Co.* v. *Savannah*, 77 Ga. 731.) The ordinance here under consideration is general in its operation, affecting alike all corporations and individuals who are similarly situated and bear the same relation to the streets of the city. The rule of equality and uniformity is not invaded, nor does the ordinance unjustly discriminate against any individual or corporation.

It is urged the ordinance granting the license to lay the tracks and operate the street railway in Kinzie street constitutes a contract between the city and the traction

company, the obligations whereof cannot be impaired by any ordinance subsequently enacted, and we are invited to consider whether the provisions of the ordinance so granting permission to occupy the street with the tracks of its railway, and operate its cars on such tracks, do not relieve the defendant in error company of the burden sought to be laid upon it by the ordinance here endeavored to be enforced. On the other hand, counsel for the city insist the latter ordinance requires the company to do no more than it is bound to do by a fair and reasonable construction of the terms and provisions of the former ordinance granting authority to the defendant in error company to occupy the street with its tracks.

The city, as the representative of the State, is invested with power to enact and enforce all ordinances necessary to prescribe regulations and restrictions needful for the preservation of the health, safety and comfort of the people. The exercise of this power affects the public and becomes a duty, the performance whereof is obligatory on the city. The city could not, by the terms and conditions of the former ordinance, deprive itself of this power or relieve itself of this duty, nor could the defendant in error company, by any contractual terms of an ordinance, exempt itself from the proper and reasonable control of the municipal authorities in matters affecting the health, safety or comfort of the people. "No contract can be made which assumes to surrender or alienate a strictly governmental power which is required to continue in existence for the welfare of the public. This is especially true of the police power, for it is incapable of alienation. It cannot be doubted that a company which secures the right to use the streets of a municipal corporation takes it subject to the police power resident in the State as an inalienable attribute of sovereignty." Elliott on Roads and Streets, p. 801.

We are of the opinion the ordinance under consideration is a reasonable and valid exercise of the police

power, and that it should be obeyed and enforced accordingly. The judgment of the criminal court is therefore reversed and the cause is remanded to that court for further proceedings in conformity to this opinion.