## Jacob P. Nau, Appellee, v. Standard Oil Company, Appellant.

### Gen. No. 5223.

1. EVIDENCE—*effect of greater number of witnesses.* The jury cannot lawfully from mere caprice entirely disregard the larger number of witnesses testifying for or against the parties.

2. EVIDENCE—*as to what medical expert competent.* A medical expert who has qualified himself for the purpose of testifying in a cause is competent as to objective symptoms but not as to subjective symptoms or self-serving statements.

3. EVIDENCE—*what competent by way of impeachment.* If a witness out of court has made statements with respect to a material matter contrary to his testimony given in court, such statements may be shown by way of impeachment.

4. INSTRUCTIONS—*when allowing declaration to be considered as evidence will not reverse. Held,* that an instruction did not require a reversal where by an evident mistake the jury were permitted to consider the declaration as evidence, it not appearing that the declaration was taken by the jury.

5. INSTRUCTIONS—*when reference to number of witnesses not erroneous.* An instruction which pertinently refers to the number of witnesses testifying in a cause is not erroneous in omitting other elements which bear upon the question of the preponderance of the evidence; the instruction containing such reference not being given upon the subject of the preponderance of the evidence.

6. INSTRUCTIONS—*when refusal of correct will not reverse.* A correct instruction may properly be refused if the contents are substantially contained in other instructions given.

7. ANIMALS—*when modification of instruction in action for injuries resulting from alleged vicious, will not reverse. Held,* in the particular instruction in question, it was not error for the court to strike out the words "It was the result of playful, frolicsome feeling or spirit that she was in."

8. VERDICTS—*when excessive.* *Held*, in an action for personal injuries resulting from being kicked by a horse, that the sum of $5,000 was excessive where it appeared from the evidence that the plaintiff was kicked in the lower part of the abdomen and that immediately afterwards he vomited blood; that he went to bed and called a doctor who found black spots on the lower side of the abdomen; that he had fever and suffered from acute peritonitis; that the region of the injury was swollen and that it was four or five weeks before he was able to get around, and that he complained of distress in the region of the injury from that time on; that an enlarged hardened condition appeared there, and a fistula developed that opened and discharged near the rectal opening; that this at times closed and had to be cut open, which was done four or five times; it, however, further appearing that all of such injuries were not justly attributable to the kick.

Action in case for personal injuries. Appeal from the Circuit Court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed March 11, 1910.

PINKNEY & McROBERTS, for appellant.

CLYDE E. STONE, GEORGE B. FOSTER and ELMER J. STOUGH, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

Jacob P. Nau, appellee, was, for a number of years, in the service of the Standard Oil Company, appellant, as a cooper. On October 3, 1906, he was directed by appellant's foreman to lead a span of horses from appellant's barn to certain scales about two and a half blocks distant for the purpose of weighing them. On the way back to the barn, one of the horses kicked him in the groin or lower part of the abdomen, and, as he claims, very seriously injured him. He sued appellant to recover damages for such injuries. On the trial the cause was submitted to the jury on the first additional count of the declaration, which averred that appellant had in its possession a vicious horse which was liable to kick at persons handling it, which the appellant knew or might have known, and appellee

did not know and had no means of knowing; and that while appellee, in the exercise of due care for his own safety, was leading the horse it kicked him in the stomach and greatly injured him. On the trial, appellee obtained a verdict and a judgment for $5,000, and the company appeals.

It is contended that appellant's knowledge of the vicious disposition of the horse is not established by the greater weight of the evidence and therefore the verdict of the jury is contrary to the greater weight of the evidence. Appellee produced a number of witnesses, who testified that while the animal was owned and used by appellant, she did, at various times before the injury to appellee, kick at persons, and that the fact was repeatedly reported to appellant's superintendent. Appellant produced a large number of witnesses who had known the animal before it was purchased by appellant and who testified that it was not in the habit of kicking. It does not follow from this that the preponderance of the evidence is, that at the time appellee was injured the animal was not vicious. She may not have been vicious when being worked on the farm, or during the brief time that she was in the hands of dealers, and may have shown viciousness after appellant bought her and she was placed in different surroundings. Whether or not the animal was vicious was a question of fact for the jury and it was within their province to determine, where and with whom, the preponderance of the evidence lay. The jury could not wilfully, from mere caprice, entirely disregard the larger number of unimpeached witnesses testifying for or against the parties, but they had a right to consider that some of appellant's witnesses were testifying to a period considerably before this injury, and others had but little real knowledge of the animal, and that appellee's witnesses knew the horse well and testified to a period immediately preceding the injury; that among them was her driver, the

blacksmith who shod her, and men who saw her often in the stable. The jury were the judges of the credibility of the witnesses and their means of knowledge, and evidently considered the testimony of the witnesses for appellee of more weight than that of the witnesses for appellant. We cannot say that their verdict is against the clear weight and preponderance of the evidence and therefore we would not be justified in setting it aside on the ground that the *scienter* was not proven.

Appellant contends that the court erred in the admission of the testimony of Dr. Forrest on the ground that it was based upon an examination made solely for the purpose of testifying, and cites a number of cases in support of its contention. An examination of the authorities relied upon shows that in each one the doctor testified from subjective symptoms, as well as from what he saw. In this case the questions put to Dr. Forrest limited the conditions inquired about to those disclosed by objective symptoms, and we find nothing in his testimony that leads us to believe that he based it upon anything else, and we conclude that its admission was not erroneous. Complaint is also made that the doctor assumed that the conditions to which he testified were the results of the injury sustained by appellee in October, 1906. This position is without foundation, as an examination discloses that he simply answered a hypothetical question containing this assumption put to him as an expert. Complaint is also made that the trial court erred in permitting Drs. Whiting, Early and Shoaf, to testify for appellee as to results that might possibly follow from the injury to appellee. A careful examination of their testimony convinces us that appellant's position is not well taken in this regard as so far as their answers went they related to probable results not those merely possible, and that there was no error in the admission of their testimony.

For appellant, its manager, Trann, testified in chief that he knew the mare and had never known her to kick. On cross-examination he was asked, fixing the time and place, whether he had not had a conversation with a Mr. Firebaugh with relation to this horse a short time after the injury to appellee, and he answered, "No." He was then asked, "Isn't it a fact that on that occasion you told him this, or this in substance. 'We will have to get rid of this mare, this isn't the first time she had kicked.' " His answer was, "No, sir, it isn't true." In rebuttal, over appellant's objection, Firebaugh was asked if Trann did make that statement to him at that time and place, and he answered that he did. It is contended that this evidence is incompetent, inasmuch as the conversation was not in the presence of appellant; that it was long after the accident and could not be regarded as a part of the *res gestae,* and that it would not have been competent if offered by appellee as direct proof. This evidence was not offered as a part of the *res gestae* and it is immaterial that the conversation was made out of the presence of appellant or subsequent to the accident. It was offered only for the purposes of impeachment, to show that the witness had made a statement out of court on a material point contradictory to a sworn statement made as a witness. Whether this mare had the habit of kicking at persons before the accident was a material matter and if Trann made statements out of court relative thereto contrary to those made in court, appellee had a right to ask him if he made such statements, and if he denied them,. then for the purposes of impeachment call Firebaugh and contradict him.

It is claimed that appellee's first instruction omits the element of care on the part of appellee, prior to, and at the time of, the injury, and the element of knowledge of appellant of the disposition of the horse. We are convinced that the reasonable construction to

be placed upon the instruction is, that it told the jury that appellee must prove all the material allegations of the first additional count of his declaration before he was entitled to recover. Since that count alleged knowledge on the part of appellant of the disposition of the horse, and due care and caution on the part of appellee, we do not see wherein the instruction is erroneous.

Appellant complains that appellee's second instruction assumes that there was a risk in taking the animal to be weighed. The instruction did not contain such an assumption but left it to the jury to determine whether any risk was shown by the evidence, as it specifically stated, "if any risk is shown by the evidence to have existed."

The third instruction related to the measure of damages, and was, in the main, upon a form approved in Cicero Street Ry. Co. v. Brown, 193 Ill. 274, but by an evident mistake, the last clause of the last sentence of the instruction read: "are claimed and alleged and proved by the evidence in the declaration herein." The declaration is not evidence nor is there anything in the record to show that the jury were allowed to take the declaration when they retired to consider their verdict. We are of the opinion that this misplacement of a phrase did not mislead the jury.

It is complained that appellee's fourth instruction omitted the element of numbers in telling the jury how to determine where the preponderance of the evidence lay. By it the court told the jury that the credibility of the witnesses is a question exclusively for the jury; and that the law is, that, "where a number of witnesses testify directly opposite to each other, the jury are not bound to regard the weight of the evidence as evenly balanced." This instruction is not directed to the question of the preponderance of the evidence and it was not necessary to embody the element of the number of witnesses therein. It is not, as claimed by

appellant, in violation of the rule announced in the case of Elgin, Joliet & Eastern Railroad Co. v. Lawlor, 229 Ill. 630, or in the case of Chicago Union Traction Co. v. Hampe, 228 Ill. 350.

Appellant's third instruction as requested, read as follows: "The jury are instructed, that, if you believe from the evidence that at the time the gray mare of the defendant kicked the plaintiff while he was engaged in leading her back from the scales to the barn, it was the result of a playful, frolicsome feeling or spirit that she was in, and not any natural vicious disposition, then under such circumstances, if you believe, the plaintiff cannot recover and your verdict should be for the defendant." The court modified the instruction by striking out the words "It was the result of a playful, frolicsome feeling or spirit that she was in." We are of the opinion that the instruction as modified and given by the court contained all that appellant was entitled to on that subject.

Appellant complains that the court refused six instructions requested by it. An examination shows that the principles of law correctly stated therein were contained in other instructions which the court gave. The fifth, the refusal of which appellant contends is reversible error, relates to the fact that appellee was permitted to testify on his own behalf, and that his interest in the event of the suit might be considered in determining the credit to be given to his testimony. This instruction stated a correct rule of law and appellant was entitled to have the jury instructed thereon. Had it not been embodied in other instructions given, its refusal would have been reversible error, under the authority of West Chicago St. Railroad Co. v. Dougherty, 170 Ill. 282; Chicago & Eastern Illinois Railroad Co. v. Burridge, 211 Ill. 9. However, in these cases there was no other instruction telling the jury that the interest of the witness was to be considered. In this case, the seventh instruction given

for appellant told the jury that in determining the weight to be given to the testimony of the different witnesses, they had a right, "to take into consideration the interest of the witnesses, if any, in the event of the suit, their feelings, or bias, if any had been shown, their demeanor while testifying and their means of knowledge of the matters testified to, and to give credit to the testimony of each witness as, under the circumstances in evidence, such witness seems entitled to." We conclude that this instruction sufficiently embodied the principle contended for by appellant.

Appellant does not deny that appellee was kicked by the mare, but claims that the damages, if recoverable under the proof, are in excess of a reasonable compensation for the injuries sustained. The evidence shows that appellee was kicked in the lower part of the abdomen, and that immediately afterwards he vomited blood; that he went to bed and called a doctor who found black spots on the lower side of the abdomen; that he had fever and suffered from acute peritonitis; that the region of the injury was swollen and that it was four or five weeks before he was able to get around, and that he complained of distress in the region of the injury from that time on; that an enlarged hardened condition appeared there, and a fistula developed that opened and discharged near the rectal opening; that this at times closed and had to be cut open which was done four or five times. Two doctors testified that the condition was probably permanent; one that it would lessen his earning capacity and that an operation might benefit him but that it was uncertain, and that from the history he got he concluded that abscesses which formed and discharged came from the injury, and that the condition would be a hindrance to appellee in every move he made. One doctor testified that he would not want to say that the fistula was due to the injury; that it was possible that

it was; nor would he say this condition was permanent or was not. Another doctor testified that appellee seemed to be in good health prior to the injury. Appellee testified that he had not been able to work at his trade as cooper since the injury; that abscesses had formed fifteen or twenty times in his abdomen and discharged blood and pus through his bowels since the injury; that he had suffered from piles prior to the injury.

Under a consideration of all the evidence upon the extent of his injuries we conclude that not all of the troubles of which appellee now complains are justly attributable to this kick. We conclude that the damages are excessive. This opinion will be lodged with the clerk and counsel will be notified, and if within five days appellee remits $1,500 of the judgment, it will be affirmed in the sum of $3,500 at the costs of appellee, otherwise it will be reversed and remanded.

Appellee having filed a *remittitur* herein for $1,500 the judgment is therefore affirmed in the sum of $3,500 at the costs of the appellee.

*Affirmed upon remittitur.*