Henry A. Fowler, Administrator of the Estate of Edward S. Allen, Deceased, Appellee, v. Chicago Railways Company, Appellant.

Gen. No. 22,460.

1. APPEAL AND ERROR, § 1691*—*when objections to evidence are waived.* Specific objections to evidence which might have been cured had they been raised at the trial are waived if not specifically made there, and the statement of one waives all other objections.

2. APPEAL AND ERROR, § 1803*—*when cause will not be remanded for new trial.* A cause will not be remanded for new trial on account of a supposed absence of formal proof of an indisputable fact of common knowledge.

3. EVIDENCE, § 154*—*what constitutes admission that defendant street railroad is bound by ordinance under which it was operating.* The words and actions and failure of appellant's counsel to make specific objections at the trial as to the ordinance offered in evidence under which defendant was operating as a street car company, *held* to be an admission that defendant was bound by the terms of such ordinance and that it was applicable to the situation before court and jury and in force and effect at the time of the accident in question, in an action to recover damages for death of such accident.

4. STREET RAILROADS, § 44*—*when verdict in favor of city does not exonerate street railroad from liability for damages for accident due to defective condition of street.* Where, by the terms of an ordinance under which a street car company was operating its tracks in the city streets, the company was obligated to keep such portion of the street as was so occupied by it in repair, a verdict in favor of the city in an action to recover damages due to an accident arising from such portion of the street being in bad repair, *held* not to preclude a verdict against the company.

5. STREET RAILROADS, § 44*—*when contributory negligence of person injured by defect in street which railroad company obligated to keep in repair not shown.* The fact that a defect in a portion of a public street occupied by a street car company, and which it was obligated by the terms of the ordinance under which it was occupying the street to keep in repair, was open and obvious, does not necessarily show that a person injured by reason of such defect was not in the exercise of ordinary care at the time he was injured, as

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

what is notice to a street car company whose employees are constantly passing and repassing a given spot is not necessarily notice to the driver of a wagon, in an action to recover damages against such company by a person injured by reason of such defect.

6. EVIDENCE, § 476*—*when finding based upon lesser number of witnesses is proper.* The jury are entitled to find in favor of a party even if his case is supported by the lesser number of witnesses.

7. STREET RAILROADS, § 44*—*when contributory negligence of person driving wagon down grade on street not shown.* The fact that the driver of a wagon was, at the time of an accident resulting in his death, sitting upon a narrow, elevated seat, without a foot rest, while driving down grade, *held* not to indicate anything so inherently dangerous as to show that the jury's conclusion that he was in the exercise of ordinary care was contrary to the manifest weight of the evidence, in an action to recover for his death, due to a wheel striking a hole in the portion of the highway which defendant street railroad was obligated to repair.

8. STREET RAILROADS, § 44*—*when arrangement of seat on wagon may be considered on question of exercise of ordinary care by driver.* In an action to recover damages for the death of a driver of a lumber wagon, having a narrow, elevated seat, while driving down grade, due to a wheel striking a hole in the portion of the street which defendant railroad company was obligated to repair, *held* that the question whether the seat was arranged in the usual and customary way arranged by haulers of lumber was proper for the jury to consider, in determining whether he was in the exercise of ordinary care for his own safety.

9. APPEAL AND ERROR, § 450*—*when objection as to immateriality of evidence comes too late.* Where a question and answer were objected to as immaterial, but no objection was made at the trial that it was prejudicial and no exception was taken to it on that ground, *held* that such objection came too late on appeal.

10. TRIAL, § 54*—*when erroneous question answered affirmatively is not ground for withdrawal of juror.* A question whether the minor sister of a decedent, in an action to recover damages for his death, living with the witness, her mother, was a widow, answered affirmatively and withdrawn on objection to its form, *held.* if erroneous, not to warrant withdrawal of a juror at the close of a long drawn-out trial.

11. STREET RAILROADS, § 44*—*what is effect of ordinance requiring repair of portion of street occupied by company on right of action by third persons for injuries.* A requirement in an ordinance permitting a street railway company to occupy a street of the city

*See Illinois Notes Digest, Vols, XI to XV, and Cumulative Quarterly, same topic and section number,

with its car tracks that the company shall keep such portion of the street in repair is one enacted for the benefit of the public, and an injury or death caused by the company's failure to keep such portion of the street in repair gives rise to a cause of action against the company.

12. INSTRUCTIONS, § 81*—*when instruction singling out facts is properly refused.* Refusal of an instruction, in an action to recover damages for death of the driver of a wagon due to a wheel of his lumber wagon running into a hole into that portion of the street which a street railroad was obligated to repair, while he was driving down hill, which singled out the fact he was riding on a board or plank extending out in front of the principal part of the lumber and that on the basis of that fact the jury could find he was guilty of negligence, *held* proper.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1916. Affirmed. Opinion filed October 10, 1917.

THOMAS J. SYMMES and FRANK L. KRIETE, for appellant; W. W. GURLEY and J. R. GUILLIAMS, of counsel.

WILEY W. MILLS, HENRIETTA KRIGHEL and MORRIS J. DREZNER, for appellee.

MR. PRESIDING JUSTICE GOODWIN delivered the opinion of the court.

Appellee, who will be referred to as plaintiff, recovered a judgment for $3,500 on account of the death of his intestate, in an action brought for the benefit of the surviving mother and minor sister. The declaration alleged that the appellant, who will be referred to as the defendant, was in control of a certain portion of a public highway, and operated a street railway over it under the provisions of an ordinance which required it to keep that portion of the highway in safe repair and condition; that it failed to do so, and left certain holes in the pavement; that the intestate, while driving along this portion of the highway, in the exer-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

cise of ordinary care for his own safety, was killed by reason of a wheel striking one of the holes in defendant's right of way. In one count, the provisions of the ordinance in regard to repair of defendant's right of way were set out in full.

The first objection to the judgment is based upon the theory that the evidence fails to show that the defendant was, at the time of the accident, operating the street railway under the terms of the ordinance. It appears, however, that at the opening of the trial, defendant's counsel admitted that there was no dispute but what the tracks were the tracks of the Chicago Railways Company. He was then asked as to whether there was any dispute about the ordinance, to which he replied, "I don't know. You will have to introduce it. I don't think that ordinance applies to viaducts and bridges." Mr. Mills: "All right. I have here the special ordinances of the City of Chicago published by authority of the City of Chicago in the year 1915. I desire to read, first, from page 1616, section 1, following the preamble of the ordinance under which the Chicago Railways Company is operated." Mr. Symmes: "Just a moment before you read that. I don't believe that the ordinance is sufficiently pleaded in the declaration." The Court: "Is it set out in the declaration?" Mr. Mills: "The section in question is the section which we insist applies. Of course this section need not be read in view of counsel's admission that the Chicago Railways Company, the defendant, was operating there at that time and maintaining the tracks." Counsel for appellee then read the portions of the ordinance reciting that the grant was made in consideration of the acceptance by the company of its ordinance, subject to all the provisions, conditions, requirements and limitations thereof, and those relating to filling, grading, paving and keeping in repair the portions of the street occupied by the

defendant's right of way. Counsel now contend that there was no proof that the ordinance published in 1915 was in force at the time of the accident, or that it was bound by its terms. The statements of counsel, apparently made in the presence of the jury at the opening of the case, were for the purpose of getting before it such facts in connection with the physical situation at the place where the injury occurred, and in reference to the rights and duties of the defendant, as were not in dispute. We see that counsel begins by saying that he does not know that there is any dispute about the ordinance, that he does not think it applies to viaducts and bridges. He permits appellee's counsel to say that he is reading the preamble of the ordinance under which the Chicago Railways Company is operating. The only objection made to the proof was that counsel did not think that the ordinance was sufficiently pleaded in the declaration. If the ordinance had not been in force and effect at the time of the accident, that would have been a proper ground of objection. If the Chicago Railways Company was not the grantee, and was not operating under the terms of that ordinance, that also would have been a proper ground of objection, and these objections could, of course, have been obviated by the offer of other proof. It is unnecessary to refer at length to the long and unbroken line of authorities in this State which hold that where there are specific objections to evidence which might have been cured, had they been raised at the trial, they are waived if they are not specifically made there, and that the statement of one objection is a waiver of all other objections which could be cured by the introduction of other proof or otherwise. The following cases, however, are quite similar to the one at bar: (*Conway v. Case*, 22 Ill. 127, 139; *Garrick v. Chamberlain*, 97 Ill. 620; *Chicago & E. I. R. Co. v. People*, 120 Ill. 667; *Ewen v. Wilbor*, 208 Ill. 492; *Cleve-*

*land, C., C. & St. L. R. Co. v. Bruce,* 63 Ill. App. 233; *Hinchliff v. Robinson,* 118 Ill. App. 450). The settlement ordinances of 1907, under which the defendant was operating at the time of the accident, and of which the paragraphs offered in evidence are a part, were, moreover, passed after a public agitation which extended over a period of twenty years, during which the matter had the repeated attention of the General Assembly and our courts. The ordinances in question, themselves, were passed after years of public negotiations between committees of the city council and the defendant's predecessors, and were submitted to the voters for approval or rejection under the authority of an act of the General Assembly, after prolonged and vehement public discussion. Is it, then, improper to say that the fact that the ordinance under which the defendant was operating was in force prior to 1913 is one of common knowledge of which the court and jury may properly take cognizance? To send a cause back to the trial court for a new trial on account of a supposed absence of formal proof of an indisputable fact of common knowledge, would, it seems to us, be a grotesque travesty upon the administration of justice. In addition, we think that defendant's counsel at the trial, by words and actions and failure to make specific objections, admitted that it was bound by the terms of the ordinance offered in evidence, and that that ordinance was applicable to the situation before court and jury, and was in force and effect at the time of the accident.

Counsel next contends that as there was a verdict directed in favor of the City of Chicago in this case, it necessarily follows that no verdict could be sustained against it, since by the terms of the ordinance it merely took upon itself what was a portion of the city's duty. To this there seems to be a conclusive answer. In order to constitute a cause of action, the street must

not only be in bad repair, but it must also be shown that the one having the duty to repair knew or should have known of the defective condition of the street. It may well be that facts and circumstances would be sufficient to apprise the street railway company of a defective condition in its right of way, where its cars were constantly passing and repassing, which would not, in themselves, be sufficient notice to the city. It therefore does not follow that the defendant could not be guilty of a breach of duty merely because the city was not. We think, however, that the contention itself is fallacious. If the city were being sued under the principle of *respondeat superior* on account of the failure of the defendant to keep its portion of the street in proper condition, then, of course, a verdict in favor of the defendant would exonerate the superior, but the proposition that defendant cannot be held for its own negligence merely because there may be circumstances which exonerate the city, seems in no way supported by reason or authority.

It is next claimed that because the testimony showed that the defect was open and obvious, the deceased was necessarily not in the exercise of ordinary care. We are unable to agree that this is a necessary inference. What is notice to a street car company, whose employees are constantly passing and repassing a given spot, is not necessarily notice to the driver of a wagon. There are obviously almost innumerable things which might well prevent a driver from observing a defect in the pavement, even while he was in the exercise of ordinary care for his own safety. Appellant contends that the evidence clearly preponderates in its favor because more witnesses testified on its side than on the appellee's in connection with the question of whether the accident happened as the result of a defect in the pavement, but the law of this State clearly is that the jury are entitled to find in favor of a party even if his case is supported by the lesser number of witnesses.

For appellant it is also contended that the deceased's injury resulted from the fact that he was perched upon a narrow, elevated seat, without a footrest, while driving down grade, and that this circumstance shows that he was not in the exercise of ordinary care for his own safety. We are unable to say that there was anything inherently dangerous about the manner in which the deceased was seated and driving at the time of the accident, or that the jury's conclusion that he was in the exercise of ordinary care was contrary to the manifest weight of the evidence. What was said by our Supreme Court in *Chicago, R. I. & P. Ry. Co. v. Steckman,* 224 Ill. 500, 504, seems a very direct answer to appellant's contention.

In examining a team owner, appellee's counsel asked: "The way in which the seat for the driver was prepared, was that, if you know, a usual and customary way that haulers of lumber arrange the driver's seat?" A. "Yes, they always put it on." Mr. Symmes: "Wait, I object to that." Counsel contends that this was prejudicial error, and cites cases in which it has been said that one is bound to use due care, and what others did or were in the habit of doing did not tend to prove that issue, and also that the doing of a thing in the usual way is not evidence that such way is safe, and is no excuse for negligence, and that a thing done in the usual and customary way is not evidence on the question of negligence; the usual and customary way may be a negligent way. We think, however, that these propositions of law, although essentially correct, have no application to the present question. The issue was not as to whether the driver's seat was properly prepared, but rather as to whether the deceased was, at and immediately before the accident in question, in the exercise of ordinary care for his own safety. The question of whether the seat upon which he was sitting was constructed in

the usual and ordinary manner, or not, was a fact which the jury might consider in determining whether he, himself, was in the exercise of ordinary care for his own safety. In this connection, our Supreme Court said, in *Campbell v. Chicago, R. I. & P. Ry. Co.*, 243 Ill. 620, 624:

"It is true that negligent acts do not cease to be negligent because they are frequent, but proof of a customary method of doing an act by those who are frequently and habitually required to perform it is some evidence as to whether the method is or is not negligent."

See also, *Franey v. Union Stock Yard & Transit Co.*, 235 Ill. 522, at p. 528.

Counsel state that the question put by appellee's counsel to a witness, asking him what he could say "with regard to Mr. Allen's experience as a driver and his skill as a driver, or lack of it," was improper. An examination of the abstract of the record discloses that the question was never answered. The court did ask the witness whether the deceased was a "good driver," to which the witness answered. "He was a good lumber man. He was well experienced in handling lumber." No objection was made to this question or answer. A witness was asked, "Isn't it a fact that he (the decedent) worked whenever he could get work?" This was objected to by the appellant, and the objection was overruled, and this ruling is assigned as error. The question, before answered, was, however, modified by the words, "so far as you know." We think this modification cured the objection. The witness answered, "I never knew him to lay down when he could get work. He was always willing to work." This was objected to as not being within the witness' knowledge. It is very obvious that the answer must be taken in connection with the question, and was really a statement that the decedent was always willing to work when he could get work, so far as the

witness knew, and the record shows that the witness had some knowledge in regard to that matter. Appellant's counsel inquired of decedent's mother as to whether she visited him while he was in the hospital. She stated she did when she was able. In this connection, the court said, "You use a crutch, don't you?" She answered, "Yes, I have walked with a crutch since I was seven years old." Appellant's counsel objected to it as immaterial, but no objection was made that it was prejudicial, and no exception was taken to it on that ground. We think that that objection now made comes too late, and, if advantage was to be taken of it, the objection should have been made on the trial. This witness also stated that her daughter, a minor sister of the decedent, was living with her. Counsel then asked, "Is she living with her husband, or is she a widow?" A general objection was made to this question, and the witness answered, "She is a widow." Appellant's attorney then said, "I take an exception to that question in that form." Mr. Mills: "I will withdraw it if there is any objection." Mr. Symmes: "I ask at this time, on account of that question, that a juror be withdrawn." We note that the objection made was to the form of the question, and not to its substance. We do not see how the question of whether decedent's sister was married, unmarried, or a widow, could have any effect upon the jury's verdict, and if the admission of the evidence was erroneous, it was not an error of that serious character which would have justified the withdrawal of a juror at the close of a long drawn-out trial. There is nothing in the fact that a minor is a widow that would of necessity arouse the sympathies of a jury and excite prejudice in her favor. The court is not aware that young women in that situation are in general considered in greater need of assistance than their unmarried sisters, and we see no reason why

proof of the fact should be held to be uncorrectable error. The statement of the fact was no more than an explanation of why the married daughter was living with the mother. Moreover, the fact subsequently appeared when Mrs. Madera, the sister in question, took the stand, and no objection was made to it then.

For appellant it is contended that its failure to comply with the provisions of the ordinance with reference to keeping its right of way in good condition and repair did not give rise to a liability in favor of an individual injured in consequence thereof. The right of a municipality acting under the authority of its delegated powers to impose upon a street railway a duty to keep a portion of the street in good condition and repair is fully sustained by the authorities (see *City of Chicago v. Chicago Union Traction Co.*, 199 Ill. 259), and that duty is no less binding when the ordinance imposed by it is formally accepted by the street railway company. By the terms of the provision, the public authorities seek to insure the safety of those using the portion of the street specified. The requirement is obviously one enacted for the benefit of the public. Clearly, deceased, as a part of the general public using the public street, was one of those for whose benefit the stipulation was made, and in consequence, as his death resulted from appellant's failure to comply with the terms of the requirement, that fact gave rise to a cause of action. (See *Texas & P. Ry. Co. v. Rigsby*, 241 U. S. 33, at p. 38; *Kenna v. Calumet, H. & S. E. R. Co.*, 206 Ill. App. 17.) The case of *Rockford City Ry. Co. v. Blake*, 173 Ill. 354, cited on this point on behalf of appellant, is not in point, and is distinguished in *United States Brewing Co. v. Stoltenberg*, 211 Ill. 531.

Counsel for appellant criticise the instruction which told the jury that they were not bound to regard the weight of the evidence as evenly balanced merely be-

cause of numbers; that they had a right to determine from their appearance, manner of testifying, apparent character, fairness, intelligence, opportunity of seeing and knowing the things they were testifying about, which of the witnesses were more worthy of credit. The instruction was not one in regard to determining the preponderance of the evidence, and what is said in criticism of it is fully answered in *Nau v. Standard Oil Co.*, 154 Ill. App. 421, at p. 426. Other instructions were offered which, in substance, would have informed the jury that the defendant could not be held liable unless the city also was liable. These instructions were properly refused for the reasons already given. Nor do we think the court erred in refusing an instruction which singled out the fact that the intestate was riding on a board or plank extending out in front of the principal part of the lumber, and told them that on the basis of that fact they could find that he was guilty of negligence. Other exceptions were taken to the action of the court in giving and refusing instructions, but we think they are not well grounded, and that it is not necessary to discuss them in detail.

For the reasons indicated, the judgment of the Superior Court is affirmed.

*Affirmed.*