―――――o―――――

## CARLISLE and Another *v.* THE STATE.

OHIO RIVER.—*Boundary of the State.*—*Jurisdiction.*—A county of this State
lying along the Ohio river is bounded, on the side adjoining that river, by
low-water mark; and the boundary of Kentucky opposite to such county is
low-water mark on the Indiana side of the river. The proper courts of such
county have concurrent jurisdiction with the courts of Kentucky over crimes
committed on said river opposite to such county.

CRIMINAL LAW.— *Venue.*— *Variance.*—A variance between the allegation in
an indictment as to the place where the offense was committed and the proof
on the trial, the place not being a part of the description of the offense, and
both places being within the jurisdiction of the court, is not material.

SAME.—An indictment for murder, in the circuit court of the county of Spen-
cer, charged the offense to have been committed "at and in the said county
of Spencer." The evidence tended to prove that the crime was committed
on the Ohio river opposite to said county, below low-water mark.

*Held*, that the variance was immaterial.

APPEAL from the Posey Circuit Court.

RAY, J.—The appellants were indicted in the Spencer
circuit court for murder. The case was transferred to the
court below by change of venue. The indictment charges
the offense to have been committed "at and in the said
county of Spencer." The defendants were tried and con-
victed on a plea of not guilty. A motion for a new trial
was overruled.

The evidence tended to prove that the crime was com-
mitted on the Ohio river, outside the territorial limits of

Spencer county, but opposite thereto. This testimony was admitted over the objection of the defendants.

The court below refused to charge the jury, that if they believed from the evidence that the acts charged were committed on the Ohio river, below low-water mark, they should acquit.

The boundary of Spencer county, on the Ohio river, extends no farther than to low-water mark. *Cowden* v. *Kerr*, 6 Blackf. 280; *Stinson* v. *Butler*, 4 Blackf. 285; *Handly's Lessee* v. *Anthony*, 5 Wheat. 374.

The boundary in Kentucky, opposite to the county of Spencer, extends to low-water mark on the Indiana side of the Ohio river. *McFall* v. *Commonwealth*, 2 Met. (Ky.) 394.

By the act of the Commonwealth of Virginia, entitled "an act concerning the erection of the district of Kentucky into an independent state," passed December 18th, 1789, it is provided, "that the use and navigation of the river Ohio, so far as the territory of the proposed state or the territory which shall remain within the limits of this commonwealth lies therein, shall be free and common to the citizens of the United States; and the respective jurisdiction of this commonwealth, and of the proposed state, on the river as aforesaid, shall be concurrent only with the states which may possess the opposite shore of said river." Revised Laws of Virginia, vol. 1, p. 59.

Indiana has asserted this concurrent jurisdiction in her Constitution. Art. 14, sec. 2.

By the act of June 7th, 1852, dividing the State into counties, it is provided, "that the proper courts of the several counties in this State bordering on the Ohio river * * * shall have jurisdiction of all offenses committed against the penal laws of this State on said river, opposite to said counties respectively." 1 G. & H. 190, sec. 93.

By force of these provisions, the court of the county of Spencer has concurrent jurisdiction with the courts of Kentucky over crimes committed on the Ohio river.

The only remaining question presented by this record is,

whether the variance between the venue as stated in the indictment and that proved on the trial is material.

Anciently the venue was stated in the indictment with the utmost particularity, for the purpose of indicating the exact spot where the offense had been committed, that the sheriff might bring a jury who would most likely know all the circumstances attending the crime. This was required as the members of the jury were to act, not upon evidence produced before them, but upon their own personal knowledge of the facts. At a later date, when the jury were no longer regarded as witnesses, but as triers, this practice, requiring the exact locality to be named, still continued, until the statute 6 Geo. IV., c. 50, § 13, required the sheriff to return twelve good and lawful men of the body of his county.

In the United States, the jurors are summoned from the body of the county, and no more special venue is required. Where the jurisdiction of the court, however, only extends over a portion of the county, the venue should be so stated as to show the place where the offense is charged to have been committed to be within such jurisdiction. Where, on the other hand, such jurisdiction is not limited to the county, but, as is the case with the United States courts, extends over the state, and the jurors are drawn from the state at large, no county need be stated. *United States* v. *Wilson and Porter*, Bald. 78.

As a general rule, the venue may be stated within the jurisdiction of the court, and of the locality from which the jurors are drawn. The exception to this rule is, where the offense is of a local nature.

In the case of the *State* v. *Glasgow*, Conf. 38, it was held, that an indictment was good without a venue, if it laid the commission of the offense within the jurisdiction of the court. Blackstone says of the indictment, "the time and place are also to be ascertained by naming the day and township in which the fact was committed; though a mistake in these points is, in general, not held to be material,

provided the time be laid previous to the finding of the
indictment, and the place be within the jurisdiction of the
court, unless where the place is laid, not merely as a venue,
but as part of the description of the fact." 4 Com. 306.
In other words, place is important only on the question of
jurisdiction; time, to show a possible offense. The indict-
ment charging these within this rule, evidence showing·
the offense to have been committed prior to the finding of
the indictment and within the jurisdiction of the court is
sufficient. In Hawkins' Pleas of the Crown, vol. 2, c. 25, p.
337, it is said, "also it seems to be agreed, that a mistake
of the place in which an offense is laid will not be material
upon the evidence on not guilty pleaded, if the fact be
proved at some other place in the same county." See, also,
2 Hale's Pleas of the Crown, 181.

In 1 Wharton's American Criminal Law, § 280, it is said,
"if, however, the offense is shown to be within the jurisdic-
tion of the court, the particular place need not be proved."
"There is no necessity to prove that the facts given in evi-
dence occurred in the parish or place therein alleged; it is
sufficient to prove that they occurred within the county or
other extent of the court's jurisdiction." Sec. 601. This is
the rule as stated in 2 Russell on Crimes, 800.

In *Commonwealth* v. *Tolliver*, 8 Gray, 386, DEWEY, J., uses
this language: "In criminal prosecutions of a character like
the present, it is unnecessary to prove the place of commit-
ting the offense to be precisely in accordance with the alle-
gations in the indictment. Place is immaterial, unless when
it is matter of local description, if the offense be shown to
have been committed within the county. * * * It was no
objection, therefore, to the competency of the evidence of-
fered, that it tended to prove an assault committed in Chel-
sea, while the indictment alleged the same to have been
committed at Boston, both places being within the county
of Suffolk, and equally within the jurisdiction." This case
was followed by *Commonwealth* v. *Creed*, 8 Gray, 387.

In the case of *Heikes* v. *Commonwealth*, 26 Penn. St. 513,

it was held, that "as a general rule, place is only essential upon the question of jurisdiction, and even where it is incorrectly stated, if the evidence establishes that the offense was committed within the jurisdiction of the court, the variance will not be fatal."

From these authorities, it seems clear that, under the most technical rules applied at the common law, the objection to the evidence in this case was not well taken; that the variance between the allegation in the indictment, as to the place where the offense was committed, and the proof on the trial, was not material, both places being within the jurisdiction of the court. If, then, such a variance could not avail heretofore, it certainly cannot receive favorable consideration under a statute which requires us to give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties. 2 G. & H. 427, sec. 160.

The rule, indeed, is, that statutes fixing the venue or place of trial are not to be construed strictly; for it matters little where the accused be tried, so that the court have jurisdiction. 1 Bishop Crim. Law, § 228; *Nash* v. *The State,* 2 Greene, Iowa, 286. In the case last cited, jurisdiction was given over an offense committed on board of any vessel, to any county through which the vessel might pass on her voyage. The blow which caused the injury was inflictted in Scott county; the death resulted in Muscatine county, where the indictment was found and the defendant tried. The last count of the indictment laid the offense in general terms as having transpired in Muscatine county. This was held sufficient on appeal.

But the case of *The People* v. *Dougherty,* 7 Cal. 395, held, that where jurisdiction was given to every county through which a vessel passed on her voyage, over any offense committed on such vessel, the indictment must state all the facts giving jurisdiction. The reason given for this ruling is, that the defendant might be tried and convicted in every county through which the vessel passed, and one conviction

would be no bar to another prosecution. There is no authority cited to support this position. The test on an issue of *autrefois acquit* undoubtedly is, whether, if what is set out in the second indictment had been proved at the trial under the first, there could legally have been a conviction. When there could, the second cannot be maintained; when there could not, it can be. *People* v. *Warren*, 1 Park. Cr. 338; *Durham* v. *People*, 5 Ill. 172; *Commonwealth* v. *Curtis*, Thach. Crim. Cas. 202; 1 Bishop Crim. Law, § 886. In *Heikes* v. *The Commonwealth, supra*, it was ruled, that "where a defendant has been once tried for an offense upon an indictment on which he could have been legally convicted and sentenced, the plea of *autrefois acquit* will avail him to an indictment for the same offense." The case and the law are stated thus: "As a general rule, place is only essential upon the question of jurisdiction, and even where it is incorrectly stated, if the evidence establishes that the offense was committed within the jurisdiction of the court, the variance will not be fatal. Ordinarily the jurisdiction of our criminal courts is confined to the county where the court is holden, but by the act 23d March, 1791, the quarter sessions of a county where a bastard child is born has jurisdiction to try the reputed father upon a charge of fornication and bastardy. The indictment charged, 'that John Heikes, late of said county, yeoman, on the 13th day of July, in the year of our Lord 1853, at the county aforesaid, and within the jurisdiction of this court, with force and arms did commit fornication,' &c. Now, although the evidence proved that the fornication was committed in York, and not in Cumberland, yet as the birth took place in the latter county, its court of sessions had jurisdiction over the offender, and therefore the averment that the offense was committed within the jurisdiction of the court was sustained by the special verdict. It follows, from what has been said, that the court of quarter sessions erred in arresting the judgment upon the first indictment, and in sustaining the demurrer to the plea of *autrefois acquit*, in the case now under

consideration. As the defendant might have been lawfully sentenced upon the special verdict, he could not legally be again indicted and tried for the same offense, for this would be in contravention of the constitutional declaration that 'no person shall, for the same offense, be twice put in jeopardy of life and limb.'"

The rule, indeed, has long been established, that under such a plea, a variance between the record of the former acquittal and the indictment to which it is pleaded may be aided by averment as to time or place, both places being within the jurisdiction of the court. 2 Hawk. P. C. 525, § 3; S. P. C. 105.

The California case cited was for an assault upon A., which indeed might be repeated in every county through which the vessel passed, and there might result some inconvenience in proving the plea of a former conviction or acquittal for the same offense; but in a case like the one under consideration, where the charge is murder, the victim can suffer but once, and under another indictment in Kentucky, the facts stated in such new indictment or proved on the trial would of necessity establish the jurisdiction of the tribunal before which the present trial was had and the identity of the person killed.

While we doubt the correctness of the ruling in *The People* v. *Dougherty, supra,* it seems clear, that the reason on which that decision rests can have no force in the consideration of this case, but that both authority at common law and our statute, as well as reason, require us to hold the variance as immaterial.

The judgment is affirmed, with costs.

*W. Harrow, C. Denby,* and *A. Dyer,* for appellants.

*D. E. Williamson,* Attorney General, for the State.