CENTRAL UNION TELEPHONE COMPANY ET AL. *v.*
INDIANAPOLIS TELEPHONE COMPANY.

[No. 23,708.    Filed March 11, 1920.    Rehearing denied March 18,
1920.]

1.  CONSTITUTIONAL LAW.—*Corporations.—Public Utilities.—Sale or
    Lease of Property.—Legislative Power.*—The legislature had
    authority to confer on the Public Service Comimssion the power
    to consent to and approve sales or leases of properties of public
    service companies, in accordance with §95½ of Acts 1913 p. 67,
    §10052a *et seq.* Burns 1914, and to require such consent and
    approval to such transactions; and the commission may exercise
    such authority so long as the exercise thereof does not impair
    the obligations of a valid and subsisting contract or otherwise
    interfere with a constitutional right.    p. 218.

2.  STATES.—*Power.—Delegation of.*—The entire sovereign power
    rests with the several states except in so far as such power has
    been expressly delegated to the federal government by the federal
    Constitution.    p. 219.

3.  STATUTES.—*States.—Legislative Power.*—The entire legislative
    power of the state is vested by the Constitution in the general
    assembly, and the only restriction of such power is that expressly
    provided in the state Constitution and in those federal constitu-
    tional provisions, and treaty provisions concluded in accordance
    therewith, which apply to the states.    p. 219.

4.  STATES.—*Legislative Power.—Police Power.—Regulation of Pub-
    lic Utilities.*—The state through its legislative department of
    government may pass all laws and regulations respecting the
    peace, the safety, the health, the happiness and the general wel-
    fare of the people of the state; and under this power it may
    regulate the practices of persons and corporations engaged in
    furnishing public utility service and may fix the rates to be
    charged therefor.    p. 219.

5.  CONSTITUTIONAL LAW.—*State Regulation of Public Utilities.—
    Contractual Rights.*—The state, in regulating the practices of
    public utility companies and in fixing rates for service furnished,
    exercises a sovereign power of government, and the conditions
    and regulations imposed and the rates fixed are not contractual
    in their nature, but are binding on persons or companies affected,
    irrespective of their agreement or consent; and, since such per-
    sons or companies have no vested right in the continuance of
    conditions or rates prescribed, the state may at any time pre-

Central Union Tel. Co. *v.* Indianapolis Tel. Co.—189 Ind. 210.

scribe other conditions or rates without impairing the obligations of contracts. p. 219.

6. CONSTITUTIONAL LAW.—*State Regulation of Public Utilities.— Contracts, When Binding on State.*—The state may by contract agree for a consideration that certain conditions or rates prescribed for public utility service shall continue in force for a definite period without interference on its part, and the state thereby abdicates and relinquishes its regulatory control, so far as the other contracting party is concerned, for such period; and the exercise of such control, without consent of the other party, in derogation of the contract would be an impairment thereof within the meaning of Art. 1, §10, of the federal Constitution, so long as property rights only are concerned; but the state cannot abdicate its power to protect the life, safety, health or morals of its citizens. p. 220.

7. MUNICIPAL CORPORATIONS. — *Powers. — Derivation.* — Municipal corporations, being creatures of the state, possess only such powers as are expressly granted by the legislature, or necessarily implied or incidental thereto, and those indispensable to the declared objects and purposes of incorporation and to the continued corporate existence. p. 222.

8. MUNICIPAL CORPORATIONS.—*Franchises for Public Utilities.— Derivation of Power to Grant.*—A right granted to a person or a corporation to supply gas, water or similar public utilities, and to occupy the streets and public places of a city with instrumentalities employed for such purposes, constitutes a franchise right that can be derived only from the state. p. 222.

9. CONSTITUTIONAL LAW.—*Municipal Corporations.—Grant of Franchises.*—A grant of a franchise to a public utility company by a municipality, made pursuant to power conferred by the legislature, is binding on the municipality and on the state, and confers the right to use of the streets for placing instrumentalities to furnish service, for the specified time; and, unless the right conferred is forfeited by conduct, it becomes a contract, supported by the consideration on the grantee's part to furnish the service, and protected by the Constitution against legislative impairment, upon its acceptance and performance by the grantee. p. 222.

10. CONSTITUTIONAL LAW.—*"Police Power."—Limitation on State in Granting Franchises.*—The term "police power," within the rule prohibiting the state from abdicating such power, is not used in its broad sense, which includes almost the entire scope of legislation having for its purpose the general welfare and happiness of society and almost every function of civil govern-

ment, but is generally limited to the exercise of such power for the protection of public peace, public safety and public morals. p. 222.

11. CONSTITUTIONAL LAW.—*Legislative Power.—Restriction by Contract.*—Though the legislature may not divest itself of the power to legislate for the preservation of the public safety, the public health, the public morals and the prevention of crime, it may by contract restrict the exercise of many of its important powers. p. 223.

12. MUNICIPAL CORPORATIONS.—*Powers.—Relinquishment.*—Municipalities have no authority to relinquish by contract the right to exercise any of its powers unless the authority to do so is expressly delegated in clear and unequivocal language; and delegated power to fix rates for public utilities does not authorize a municipality to so contract as to deprive the state of power to change such rates, either through legislative enactment or through a commission on which regulatory power has been conferred. p. 224.

13. STATUTES.—*Construction.—Delegation of Power.*—All doubtful language in statutes delegating authority will be construed in favor of the retention of such power by the legislature. p. 224.

14. MUNICIPAL CORPORATIONS. — *Contracts. — Validity. — Delegated Power.*—Power to contract as to rates for public utilities when delegated in clear and unmistakable language may be so exercised as to constitute a valid contract as to rates for a definite period, binding on both the state and the municipality. p. 224.

15. STATES.—*Regulation of Public Utilities.—Relinquishment of Power.—Effect on Public.*—Where the state, either directly or through action of a municipality having express delegated authority, has by contract relinquished its regulatory control as to rates on other matters, the contract is binding only as between the contracting parties, and they by mutual consent may change the contract or release each other entirely; and, since in the making, or in agreeing to a change or to the complete rescission, of the contract, the state acts for the public, it, by so relinquishing its regulatory power, does not vest any of such power in the public, but relinquishes it only to the extent agreed upon as against the other contracting party. p. 225.

16. CONTRACTS.—*For Public Utility Service.—Effect of State's Regulatory Power.*—A person who contracts for public utility service for a definite time at a specified rate that was legal at the time, is not exempted by the contract from paying an increased rate fixed by the state in the exercise of its regulatory power before the expiration of the contract. p. 227.

NOVEMBER TERM, 1919.          213

Central Union Tel. Co. *v.* Indianapolis Tel. Co.—189 Ind. 210.

17. CONSTITUTIONAL LAW.—*Statute.—Grant of Franchise.—Relin-quishment of State's Regulatory Power.*—The conditions, restrictions and limitations contained in a grant of franchise rights by a city, in conformity with §§93, 254 of the Cities and Towns Act §§8696, 8939 Burns 1914, were contractual in their nature and suspended the regulatory power of the city and of the state, so far as mere property interests of the contracting parties were concerned, during the time fixed in the grant. p. 228.

18. MUNICIPAL CORPORATIONS.—*Delegated Power to Grant Franchises.—Withdrawal by the State.—Statute.*—By §101 of the Public Utilities Act, §10052a *et seq.* Burns 1914, Acts 1913 p. 67, giving a public utility the right to surrender within a specified time its license or franchise and to receive in lieu an indeterminate permit, the state withdrew the power of a city to abrogate or modify franchise contracts granted to a telephone company under §§93, 254 of the Cities and Towns Act, §§8939, 8696 Burns 1914, and reassumed the power to act on the subject, delegating the power to the Public Service Commission. p. 229.

19. CONSTITUTIONAL LAW.—*Sale of Property by Telephone Company.—Contracts.—Local Self-Government.*—The sale by a telephone company of its property without first obtaining the consent of the city, as required in a franchise contract with such city, did not deprive the people of the city of any constitutional right of local self-government, where the sale was made after the city's right of consent had been withdrawn by the state under §95½ of the Public Utilities Act, §10052a *et seq.* Burns 1914, Acts 1913 p. 67. p. 229.

20. CONSTITUTIONAL LAW.—*Contracts.—Impairment.—Sale by Telephone Company.*—A municipality, being a mere creature of the legislature, may not complain of the action of the legislature in reassuming delegated power to give or withhold consent to the sales of the property of telephone companies, and in conferring such power on the Public Service Commission, since the obligation of no existing contract is impaired, nor is any vested right disturbed, by such action. p. 231.

From Marion Circuit Court (31,888); *Louis B. Ewbank,* Judge.

Action by the Indianapolis Telephone Company against the Central Union Telephone Company and the city of Indianapolis. From a judgment for the plaintiff, the defendants appeal. *Affirmed.*

*Samuel Ashby, John F. Robbins, Carl H. Weyl, Thomas D. Stevenson, Harry E. Yockey* and *Dixon H. Bynum,* for appellants.

*Fesler, Elam & Young,* for appellee.

LAIRY, J.—This is an appeal from a decree entered by the circuit court of Marion county ordering the specific performance of a written contract for the sale by appellee to first-named appellant of all the real estate, buildings and other properties of appellee, including the local and long-distance telephone lines operated by appellee, and all property owned and used in connection therewith, as well as all stocks and bonds owned by said company, and all other property except cash and credits.

The court overruled separate demurrers addressed to the complaint by each of the appellants to which exceptions were reserved; and, on appellants' declining to answer or plead further, the decree was entered on the pleadings. The only question presented for review arises on the exception to the ruling of the court on the demurrer.

By the memoranda filed with the demurrers only one objection is raised as to the sufficiency of the complaint. The complaint sets out in full the franchise granted by the city of Indianapolis to the Indianapolis Telephone Company, under which that company constructed and operated its telephone system. The seventeenth section of the instrument so set is in the words following:

"It is also agreed that the franchise and privileges herein granted by the said City of Indianapolis are so granted upon the distinct condition

that neither such franchise nor any rights granted by this contract shall be hereafter assigned nor in any manner transferred by said companies, party of the second part either directly or indirectly, without the consent of the Board of Public Works of said City and ratified by the Common Council of the City of Indianapolis expressed in a resolution regularly adopted by said Board.''

The objection made to the complaint is that it does not allege that the city of Indianapolis, by its board of public works, consented to said sale and transfer, and that such consent was ratified by the common council of said city, as required by §17 of the franchise, and that it is not alleged that the franchise in question was surrendered in the manner and within the time prescribed by §101 of the Public Utilities Act, §10052x3 Burns 1914, §10052x3 Burns' Supp. 1918, Acts 1915 p. 458.

Section 95½ of the Public Service Commission Act (§10052a *et seq.* Burns 1914, Acts 1913 p. 67) provides that, where two public utilities are engaged in furnishing a like service or product, and are doing business in the same municipality or locality within the state, one of such corporations may lease or sell its property or business or any part thereof to the other, on complying with certain conditions prescribed in the section, at a price and on terms to be fixed by the Public Service Commission. The section expressly provides that such leases or sales may be made with the consent and approval of the Public Service Commission, but not otherwise.

The allegations of the complaint show that appellant Central Union Telephone Company and appellee

were engaged at the time of the contract of sale in furnishing like service to the residents of Indianapolis, and were both engaged in business in that municipality. Such allegations further show that all of the conditions precedent to the right to make the sale, as prescribed by the section of the statute cited, had been complied with, and that the consent and approval of the Public Service Commission to the sale and to the price and terms thereof had been obtained as required by said section.

Appellee takes the position that the sole power to give or to withhold consent to a sale of its property and business, under the state of facts disclosed by the complaint, was vested by the legislature in the Public Service Comimssion by the section of statute to which reference has been made, and that the power to give or to withhold such consent reserved by the city of Indianapolis in its contract with appellee has been withdrawn by the state and vested in another body of its own creation. If appellee's position is sound, the city of Indianapolis has no power to prevent the sale by withholding its consent when the Public Service Commission has given its consent and approval to such sale.

Appellants take the position that the franchise granted by the city of Indianapolis to appellee and accepted by it constitutes a legal and binding contract between the city and appellee, and that the seventeenth section of that instrument imposes on appellee a contractual obligation within the meaning and within the protection guaranteed by Art. 1, §10, of the federal Constitution. Basing their conclusion on the position thus stated, appellants assert that the state

had no power by any statute subsequently passed to impair the binding obligations imposed by §17 of the contract, and that, if the statute on which appellee relies were given the effect claimed for it by appellee, it would be inconsistent with the section of the Constitution cited and, hence, would be invalid.

There can be little doubt that it was the purpose of the legislature to confer on the Public Service Commission the power to control all mergers, consolidations and sales of public service corporations in such a way as to do justice to the public, as well as to those engaged in furnishing service to the public. It is equally clear that it was not the purpose of the legislature to divide this power so as to leave any portion of it in the municipality in which the public service corporations were doing business.

The complaint does not allege that appellee surrendered its franchise and accepted an indeterminate permit under the provisions of §101 of the Public Utilities Act, *supra;* and it must therefore be assumed that the instrument in question has not been abrogated as a whole by a mutual relinquishment of rights and release of obligations thereunder by the state on the one hand and appellee on the other. For the reason stated, and for other reasons which need not be here set out, the case of *Winfield* v. *Public Service Comm.* (1918), 187 Ind. 53, 118 N. E. 531, cannot be regarded as a decisive authority on the questions here involved.

Under the facts before the court in the instant case the franchise under which appellee was operating, if it is contractual in its nature, as asserted by appellant, is still operative, and the provisions of §17 are

still binding on appellee, unless it has been released therefrom by its compliance with the provisions of §95½ of the Public Utilities Act, *supra.*

There can be no doubt as to the authority of the legislature to confer on the Public Service Commission the power to give its consent and approval

1.  to the sale or lease of the properties of public utility corporations in conformity with a general law enacted on the subject, and to provide that such sales or lease might be made with such consent or approval, but not otherwise; and there can be no doubt that the commission may legally exercise the power granted except in cases where the exercise of such power would have the effect of impairing the obligations of a valid and subsisting contract or would otherwise interfere with some constitutional right.

In deciding the question thus presented the court is first required to consider the franchise or grant of authority, as set out in the complaint, under which appellee constructed its telephone plant and under which it was operating when the contract of sale was executed, on which this suit is based.

The written instrument was made and executed by appellee and by the board of public works of the city of Indianapolis, representing the city, and it was afterward confirmed by an ordinance of the common council of said city. The written instrument so executed was contractual in form containing mutual stipulations and agreements as to the manner in which the plant was to be constructed and operated, the rates appellee was to charge for its service, the conditions under which it might lease or sell, and numerous other agreements and stipulations which are not ma-

NOVEMBER TERM, 1919.        219

Central Union Tel. Co. *v.* Indianapolis Tel. Co.—189 Ind. 210.

terial to the questions here presented.   From a consideration of the instrument as a whole, it is apparent that it was intended to operate as a contract, binding alike on the city and on appellee.   If the city had power to make such a contract, the writing must be given the force and effect of a valid and binding contract.

Under our system of government the entire sovereign power rests with the several states except in so far as such power has been expressly delegated to the federal government by the Constitution of the United States.   The entire law-making power of the state is vested by our state Constitution in the general assembly; and the legislature is not restricted in the exercise of that power except by the express provisions of the state Constitution and those provisions of the federal Constitution which apply to the states and by the provisions of treaties concluded in accordance with the provisions of the federal Constitution.   The state through its legislative department of government may pass all laws and regulations respecting the peace, the safety, the health, the happiness, and the general well-being of the people of the state; and, under this power, it may prescribe the conditions under which persons and corporations engaged in furnishing utility service to residents of the state may do business and may fix the rates to be charged for such service.

In prescribing conditions under which service shall be rendered, and in regulating the practices of those engaged in furnishing such service to the public and in fixing rates for such service, the state exercises a sovereign power of government.

The conditions and regulations so imposed and the rates so fixed are not contractual in their nature; they are binding on the utilities affected irrespective of any agreement or consent on the part of such utilities. The utility affected has no vested right in the continuance of any condition so prescribed or in any rates so fixed, and the state may at any time prescribe other conditions or fix different rates without disturbing vested rights and without impairing the obligations of contracts. *Home Tel., etc., Co.* v. *Los Angeles* (1908), 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176; *Grand Trunk, etc., R. Co.* v. *City of South Bend* (1910), 174 Ind. 203, 89 N. E. 885, 91 N. E. 809, 36 L. R. A. (N. S.) 850; *Benwood* v. *Public Service Comm.* (1914), 75 W. Va. 127, 83 S. E. 295, L. R. A. 1915C 261.

The exercise of such power to prescribe conditions, regulate practices, and fix rates does not exhaust the power of the state on that subject, but the state 6. retains the power and may exercise it as often as it deems necessary. But the state may make a contract with a public service corporation by which it agrees for a consideration that certain conditions stated and certain rates stipulated shall continue in force for a definite period of time without interference on the part of the state.

By such a contract the state abdicates and relinquishes its power to prescribe conditions, or to regulate practices, or to fix rates, as the case may be, so far as the other party to the contract is concerned, to the extent evidenced by the express terms of the contract and for the period specified therein. During that period of time the state cannot exercise its power to change conditions or to fix rates

to the detriment of the other party to the contract, without the consent of such other contracting party. Any effort on the part of the state to do so would be ineffective, for the reason that such action would have the effect to impair the obligations of contract within the meaning of Art. 1, §10, of the federal Constitution. *Trustees, etc.* v. *Woodward* (1819), 4 . Wheat. (U. S.) 518, 4 L. Ed. 629; *Pingree* v. *Michigan Central R. Co.* (1898), 118 Mich. 314, 76 N. W. 635, 53 L. R. A. 276; *Los Angeles* v. *Los Angeles City Water Co.* (1900), 177 U. S. 558, 20 Sup. Ct. 736, 44 L. Ed. 886; *Vicksburg* v. *Vicksburg Waterworks Co.* (1907), 206 U. S. 496, 27 Sup. Ct. 762, 51 L. Ed. 1155.

To guard against any misunderstanding or misapplication of the proposition just stated and of the authorities cited in its support, it may be well to say that the power of the state to abdicate or to bargain away its right to prescribe conditions and to regulate practices is sustained when property rights only are affected; but the state cannot abdicate or contract away its power to protect the life, the safety, the health, or the morals of its citizens. *Grand Trunk, etc., R. Co.* v. *City of South Bend, supra; City of Chicago* v. *Chicago Union Traction Co.* (1902), 199 Ill. 259, 65 N. E. 243, 59 L. R. A. 666.

It has been deemed advisable to discuss at some length the powers of the state with relation to the matter under consideration before considering the powers which municipalities may exercise by virtue of the delegated authority of the state.

Municipal corporations are creatures of the state. They possess only such powers as are granted by the

7. legislature in express words, and those neces-
sarily implied or incidental to those expressly
granted, and those indispensable to the de-
clared objects and purposes of the corporation and
to its continued existence. *Pittsburgh, etc., R. Co.* v.
*Town of Crown Point* (1896), 146 Ind. 421, 45 N. E.
587, 35 L. R. A. 684; *Scott* v. *City of Laporte* (1904),
162 Ind. 34, 68 N. E. 278, 69 N. E. 675; *City of Elkhart*
v. *Lipschitz* (1905), 164 Ind. 671, 74 N. E. 528.

It is well-settled law that, when a right is granted
to a corporation or an individual to supply gas or
water, or to perform some other public service
8. of a like nature to a municipality and its inhab-
itants, and to occupy the streets and public
places of the city with instrumentalities employed
for such purposes, such grant constitutes a franchise
right which can be derived only from the state.

Where the power to make such grants is conferred
by the legislature of a state on its municipalities,
any grant made in pursuance of such authority
9. is binding on the municipality and on the state
as well after it has been accepted and per-
formed by the grantee. It confers on the
10. grantee the right to occupy the streets of the
city with its instrumentalities for the purpose
of furnishing the service specified for the period of
time fixed, unless the right so conferred is forfeited
by some conduct on the part of the grantee. Such
right is conferred in consideration of the undertaking
on the part of the grantee to perform a public service
for the period fixed. After the grantee has accepted
it and entered on its performance, it is held to be a
contract, protected by the Constitution of the United

States against state legislation to impair it. *Minot* v. *Philadelphia, etc., R. Co.* (1873), 18 Wall. 206, 21 L. Ed. 888; *Bridge Proprietors* v. *Hoboken Co.* (1863), 1 Wall. 116, 17 L. Ed. 571; *New Orleans Gas Co.* v. *Louisiana Light Co.* (1885), 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516. But by making grants and cor tracts of this nature the state does not abdicate its police power. Police power, as used in this connec-tion, however, does not refer to that power in the broad and comprehensive sense in which it is some-times used, which includes almost the entire scope of legislation, having for its purpose the general well-being and happiness of society and almost every function of civil government. *Barbier* v. *Connolly* (1885), 113 U. S. 27, 31, 5 Sup. Ct. 357, 28 L. Ed. 923. As so used, it is generally limited to the exercise of that power for the protection of public peace, public safety and public morals. *Beer Co.* v. *Massachusetts* (1877), 97 U. S. 25, 24 L. Ed. 989; *Fertilizer Co.* v. *Hyde Park* (1878), 97 U. S. 659, 663, 24 L. Ed. 1036; *Stone* v. *Mississippi* (1879), 101 U. S. 814, 25 L. Ed. 1079.

A wise policy of the law forbids the legislative body to divest itself of the power to legislate for the pres-ervation of the public safety, the public health, the public morals, and the prevention of crime for the reason that these things are so essen-tially necessary to the best interests of social organi-zation as to require that legislative power over such subjects should be constantly retained. But, notwith-standing the rule stated, the supreme legislative body of the state may by contract restrict the exercise of many of its important powers. *Asylum* v. *New Or-*

*leans* (1881), 105 U. S. 362, 26 L. Ed. 1128; *Los Angeles* v. *Los Angeles City Water Co., supra; Detroit* v. *Detroit Citizens' St. R. Co.* (1902), 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592.

While the supreme legislative body of a state has power by clear and explicit contract to relinquish the right to exercise certain of its powers, the municipalities of the state have no such power unless the authority so to do is expressly delegated in clear and unequivocal language. It has been repeatedly held that the delegated power to fix rates does not authorize a municipality to contract as to rates in such a way as to deprive the state legislature of power to change the rates so fixed by legislative act or through the action of a commission on which the legislature has conferred power to fix and regulate rates. *Home Tel., etc., Co.* v. *Los Angeles, supra; Freeport Water Co.* v. *Freeport City* (1901), 180 U. S. 587, 21 Sup. Ct. 493, 45 L. Ed. 679; *Stone* v. *Farmers' Loan, etc., Co.* (1886), 116 U. S. 307, 325, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636.

While all doubtful language in statutes delegating authority will be construed in favor of the retention of such power by the legislature, still the power to contract as to rates when delegated to a municipality in clear and unmistakable language may be so exercised as to constitute a valid contract as to rates for a definite period, binding on the state as well as on the municipality. Neither the municipality nor the state can change the rates under such a contract to the detriment of the other contracting party without his consent, as the obligations thereby created are protected by the

federal Constitution. *Detroit* v. *Detroit Citizens' St. R. Co., supra; Vicksburg* v. *Vicksburg Waterworks Co., supra; Walla Walla* v. *Walla Walla Water Co.* (1898), 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; *Columbus Railway, etc., Co.* v. *Columbus* (1919), 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669.

When a state, either directly or through the action of a municipality having express delegated authority so to do, has agreed to relinquish its right to exercise its regulatory power as to rates, or as to other matters prescribed by the contract, such agreement is reciprocal and binding only as between the parties to the agreement. Neither party to the contract can change it without the consent of the other; but the parties to such a contract may agree by mutual consent to change the contract, or to release each other entirely from the obligations of the contract. *Winfield* v. *Public Service Comm., supra.* In making the contract the state, or the city, as the case may be, represents the public as against the person or corporation with which the contract is made; and, in agreeing to a change of the contract or to its complete rescission, the city, or the state, as the case may be, acts for the public and binds it as effectively in the one case as in the other. An agreement with a public utility by which the state relinquishes its regulatory power in certain particulars affecting the contractual right of such utility does not create any such obligation on the part of the state in favor of the public. So far as the rights of the public are concerned, the state retains all of its regulatory powers. By making the contract the state relinquishes its regulatory power only to the extent expressed in

the contract, and only so far as such exercise would affect the rights of the other contracting party. In conformity to the principle thus stated, the Supreme Court of the United States, in the case of *Worcester v. Worcester, etc., St. R. Co.* (1905), 196 U. S. 539, 25 Sup. Ct. 327, 49 L. Ed. 591, held that the legislature had power to relieve the street car company from the obligation to pave the streets between its tracks and eighteen inches on each side thereof, as provided in some of its grants, and, as provided by other grants, to pave the streets on which its lines were located from curb to curb. All of these grants were accepted by the street car company, and for the purpose of the opinion the court assumed that the city in making the grants had power to impose such conditions, and that when accepted the grant with the conditions contained therein became a binding contract between the city and company. It was held that the city acted in behalf of the public in making grants, and that the legislature had a right, with the consent of the street car company, to modify or abrogate the conditions under which the locations in the streets had been granted after such conditions had been imposed by the city. In the course of the opinion it is said: "These restrictions and conditions were of a public nature, imposed as a means of collecting from the railroad company part, or possibly the whole, of the expenses of paving or repaving the streets in which the tracks were laid, and that method of collection did not become an absolute property right in favor of the city, as against the right of the legislature to alter or abolish it, or substitute some other method with the consent of the company, even though as to the

company itself there might be a contract not alterable except with its consent.''

In accordance with the same principle, the courts also hold that all contracts made for services to be furnished by public utilities must be regarded 16. as made in contemplation of the regulatory power of the state, and that, when the state exercises such power by changing rates or conditions of services, such change does not impair the obligations of existing contracts, although such contracts must yield to the changes so made. "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them. The contract will carry with it the infirmity of the subject-matter." *Hudson Water Co.* v. *McCarter* (1908), 209 U. S. 349, 357, 28 Sup. Ct. 529, 52 L. Ed. 828, 14 Ann. Cas. 560. A person who has contracted with a public utility for service to be furnished for a definite period at a specified rate, which was a legal rate at the time the contract was made, is not exempted by such contract from paying a higher rate where the rate is increased by the state in the exercise of its regulatory power before the expiration of the contract. *Union Dry Goods Co.* v. *Georgia Public Service Corp.* (1914), 142 Ga. 841, 83 S. E. 946, L. R. A. 1916E 358; *Pinney, etc., Co.* v. *Los Angeles Gas, etc., Corp.* (1914), 168 Cal. 12, 141 Pac. 620, L. R. A. 1915C 282, Ann. Cas. 1915D 471; *Knoxville Water Co.* v. *Knoxville* (1903), 189 U. S. 434, 23 Sup. Ct. 531, 47 L. Ed. 887.

Applying the principles announced to the case at hand, it is clearly apparent that conditions, restric-

**228**   SUPREME COURT OF INDIANA,

Central Union Tel. Co. *v.* Indianapolis Tel. Co.—189 Ind. 210.

tions and limitations in the grant from the city to appellee are contractual in their nature, and that the authority to contract with reference thereto was clearly and expressly delegated to the city by the statute in force at the time the grant was made. The statutes delegating such authority are as follows:

"Any city or town may enter into contract with any person, corporation or association to furnish such city or town and its inhabitants with water, motive power, heat or light, * * * or to build * * * telegraph or telephone lines * * * into or through such city or town; and may provide in such contract the terms and conditions on which such * * * telgraph or telephone services * * * may be furnished * * * to such city or town and to its inhabitants: * * * and, Provided further, That before any such contract shall be made by any city of the first, second, third or fourth class, such contract shall be first agreed to by the board of public works of such city, after which agreement such board shall cause a proper ordinance approving and confirming such contract to be presented for adoption by the common council." Acts 1905 p. 219, §254, as amended, Acts 1911 p. 181, §8939 Burns 1914.

"The board of public works shall have power: * * * Eleventh: To authorize telegraph, telephone, * * * companies to use any street, alley or public place in such city, and erect necessary structures therein, to prescribe the terms and conditions of such use and to fix by contract the price to be charged to patrons." Acts 1905 p. 219, §93, as amended, Acts 1913 p. 253, §8696 Burns 1914.

Central Union Tel. Co. *v.* Indianapolis Tel. Co.—189 Ind. 210.

A contract entered into under the provisions of this statute suspended the regulatory power of the city and of the state so far as mere property interests were concerned during the time fixed by the grant; but the contract affected only the rights of the parties to it.

The contracting parties might by agreement or mutual consent, however, change the terms of the contract, or they might agree to abrogate the contract altogether. In making the contract the city exercised a delegated power which it might exercise in modifying or abrogating the contract so long as it retained the delegated power; but the state had power to withdraw the power delegated or any part thereof at any time. By the Public Utilities Act, *supra,* the state did withdraw the power of the city to abrogate the contract in its entirety and to substitute another in its place. By §101 of that act, *supra,* any public utility may within a period of time fixed, on certain conditions provided, surrender its license, permit, or franchise, and receive in lieu thereof an indeterminate permit as provided in the act. By that act the state reassumed the power to act on that subject and delegated such power to the Public Service Commission. *Winfield* v. *Public Service Comm., supra.* As appellee did not surrender its grant within the time prescribed, it still remains in force as a contract.

By §17 of the grant, heretofore set out in the opinion, the city retained the power to give or to withhold its consent to a sale by appellee to any other person or corporation, and appellee agreed not to sell without such consent. If, before the power to give or to withhold such consent was withdrawn by the state, the city had exercised the power

by assenting to a sale, such assent would have bound the state, and any contract of sale made thereunder would have been protected by the Constitution from the imposition by the state of any additional terms or conditions or from any changes or alterations in its terms. The state, however, might withdraw the power to give or to withhold consent to such sale at any time before it was finally exercised by the city. By §95½ of the Public Utilities Act, *supra,* the power to give or to withhold consent to such sales was withdrawn by the legislature from all of the municipalities of the state, and that power was delegated to the Public Service Commission. After the taking effect of that act, the sole power to give or to withhold such consent rested in the commission, and municipalities were entirely shorn of such power.

The power of the city to make the contract, and to enforce any right thereunder was a power derived from the people. Such power, however, does not come directly from the people to the city; but it comes indirectly by delegation from the general assembly, to which body the people have, by their Constitution, entrusted their entire power in such matters. When the state withdraws any such delegated power, it acts in behalf of the people of the state. The people residing within the corporate limits of a municipality have no grounds to complain of the exercise of such a power by the legislature in behalf of the people of the entire state. They are not thereby deprived of any supposed constitutional right of local self-government.

The municipality itself, which is a mere creature of the legislature, is in no position to complain of the

action of that body in reassuming powers previously delegated. The obligation of no existing contract is impaired by such an act and no vested rights are thereby disturbed. *Tippecanoe County* v. *Lucas* (1876), 93 U. S. 108, 23 L. Ed. 822; *Worcester* v. *Worcester, etc., St. R. Co., supra.* The power to give or to withhold consent to the sale under the contract on which this suit is based rested in the Public Service Commission of the state, and the city had no power to give or to withhold such consent.

The trial court correctly overruled each of the separate demurrers to the complaint.

Judgment affirmed.

Harvey, J., absent.