Robert K. BENHAM, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 78A01–9303–CR–90.

Court of Appeals of Indiana,
First District.

Oct. 27, 1993.

Joseph A. Colussi, Colussi & Armstrong, Madison, for appellant-defendant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Today we decide how far across the Ohio River Indiana may enforce its laws. Appellant-defendant Robert Benham appeals the denial of his motion to dismiss charges of Involuntary Manslaughter, a Class C Felony,[1] Reckless Homicide, a Class C Felony,[2]

---

1. IND.CODE 35–42–1–4 (1986).

2. IND.CODE 35–42–1–5 (1986).

Operating a Watercraft While Intoxicated, a Class C Misdemeanor,[3] and Operating a Watercraft While Intoxicated Causing Death, a Class C Felony.[4]

## ISSUES

I. Does Indiana have concurrent jurisdiction with Kentucky over the Ohio River along the Kentucky shoreline?

II. Does Indiana's criminal jurisdiction statute, IND.CODE 35–41–1–1(a) (1986), permit Indiana to prosecute a defendant for criminal acts on the Kentucky side of the Ohio River?

## FACTS[5]

On August 8, 1991, Robert Benham, Beatrice Rogers, and Timothy Rogers[6] were navigating the waters of the Ohio River. A storm arose, and the boat overturned in Kentucky waters at the junction of Craig's Creek and the Ohio River. All three fell into the water; Beatrice and Timothy did not survive. This tragedy occurred south of the 1792 low water mark which forms the border between Indiana and Kentucky. *See Kentucky v. Indiana* (1985), 474 U.S. 1, 1, 106 S.Ct. 304, 304, 88 L.Ed.2d 1, 1 (adopting survey) (*Indiana III*). The parties did not stipulate, however, whether the boat capsized on the Ohio River or on Craig's Creek.

Kentucky authorities retrieved the Rogers' bodies, while unknown persons rescued Benham. Kentucky authorities later ruled the Rogers' deaths accidental. Indiana authorities took Benham into custody and the next day charged him with two counts of reckless homicide, two counts of involuntary manslaughter, two counts of operating a motorcraft while intoxicated causing death, and one count of operating a motorcraft while intoxicated.

3. IND.CODE 14–1–5–2 (Supp.1992).

4. IND.CODE 14–1–5–4 (Supp.1992).

5. This case comes before us on facts agreed upon pursuant to Ind.Appellate Rule 7.3. We commend counsel for the State and counsel for Benham on their judicious and effective use of

Benham moved to dismiss the charges against him, arguing that neither the charged acts nor the effects of the charged acts were within Indiana territory. The trial court denied this motion. Benham filed an interlocutory appeal, which the trial court certified and we accepted.

## DISCUSSION AND DECISION

### I. Standard of Review

Benham argues that Indiana cannot prosecute offenses outside its territorial boundaries, because Indiana lacks the authority to do so under federal law and state criminal law. Therefore, he contends the trial court erred by denying his motion to dismiss.

A court may, upon motion, dismiss an information if there exists a jurisdictional impediment to convicting the defendant for the offense charged. IND. CODE 35–34–1–4(a)(10) (1986). A defendant may make such a motion at any time during criminal proceedings. Ind.Crim. Rule 3. The prosecution must prove territorial jurisdiction, and the decision is for the fact-finder unless the trial court determines that no reasonable jury could fail to find territorial jurisdiction beyond a reasonable doubt. *McKinney v. State* (1990), 553 N.E.2d 860, 863. We will reverse a trial court's denial of a motion to dismiss for lack of jurisdiction only where no reasonable jury could find territorial jurisdiction beyond a reasonable doubt. *Id.* at 863–64.

### II. Concurrent Jurisdiction Under Federal Law

Benham first argues that his alleged acts occurred in Kentucky, and thus under federal law Indiana has no power to prosecute him.

We first review the history of Indiana's jurisdiction over the Ohio River. In 1784,

this underutilized tool to increase the quality and speed of appellate adjudication.

6. We are informed from oral argument held on October 14, 1993, that Beatrice Rogers and Robert Benham were engaged to be married. Timothy was the nephew of Beatrice.

Virginia released to the United States its territory northwest of the Ohio River,[7] and subsequently ratified federal plans to divide that territory into states.[8] In 1789, Virginia discarded the territory which now forms Kentucky, and provided that Virginia and Kentucky would enjoy concurrent jurisdiction over the Ohio River with the states or territories on the northwest shore.[9] The federal government subsequently ratified this Virginia Compact. 1 Stat. 189 (1791).

In 1816, Indiana became a state from part of the territory northwest of the Ohio River. Indiana's Enabling Act [10] recognized concurrent jurisdiction over the Ohio River with Kentucky, and established concurrent jurisdiction over the Wabash River with Illinois. The Indiana Constitution also recognizes concurrent jurisdiction:

> The State of Indiana shall possess jurisdiction and sovereignty co-extensive with the boundaries declared in the preceding section; and shall have concurrent jurisdiction, in civil and criminal cases, with the State of Kentucky on the Ohio river, and with the State of Illinois on the Wabash river, so far as said rivers form the common boundary between this State and said States respectively.

Ind. Const. art. 14, § 2 (1851).

The United States Supreme Court has repeatedly affirmed that "[t]he State of Indiana and the Commonwealth of Kentucky each have concurrent jurisdiction over the Ohio River." *Indiana III*, 474 U.S. at 2, 106 S.Ct. at 304, 88 L.Ed.2d at 1; *see also Wedding v. Meyler* (1894), 192 U.S. 573, 582, 24 S.Ct. 322, 324, 48 L.Ed. 570, 575.

Benham contends that the definition of "concurrent jurisdiction" in *Indiana III* is not clear. We disagree. "What the Virginia compact most certainly conferred on the States north of the Ohio, was the right to administer the law below the low-water

mark on the river." *Wedding*, 192 U.S. at 584, 24 S.Ct. at 324, 48 L.Ed. at 575.

Benham attempts to avoid *Wedding* first by suggesting that the United States Supreme Court did not consider it to be controlling authority when it decided *Ohio v. Kentucky* (1980), 444 U.S. 335, 100 S.Ct. 588, 62 L.Ed.2d 530 (*Ohio II*), and *Illinois v. Kentucky* (1991), 500 U.S. ——, 111 S.Ct. 1877, 114 L.Ed.2d 420. *Ohio II* and *Illinois* involved boundary disputes and the location of the low water mark in 1792. In neither case did the parties dispute that the border states share concurrent jurisdiction. *Wedding* would not have been relevant in those cases, since it involved concurrent jurisdiction over the waterways, not a boundary determination.

Benham also suggests that the *Wedding* court specifically reserved the issue of Indiana's criminal jurisdiction south of the low water mark. *See Wedding*, 192 U.S. at 584, 24 S.Ct. at 324, 48 L.Ed. at 575. A more careful reading, however, suggests that the *Wedding* court did not question the enforceability of criminal laws generally. *Id.*, at 584–85, 24 S.Ct. at 324–25, 48 L.Ed. at 575. Furthermore, no case has denied Indiana's right to enforce its criminal laws on the Ohio River.

As the parties conceded at oral argument, Indiana has the power under federal law and its constitution to prosecute for an offense committed on the Ohio River south of the 1792 north shore low water mark.

### III. Indiana's Criminal Jurisdiction Statute

Benham argues that despite Indiana's potential power to prosecute for offenses south of the 1792 low water mark, the criminal jurisdiction statute, I.C. 35–41–1–1,

---

**7.** Deed of Cession from Virginia, 1784 Va.Acts (11 Hen.) 571.

**8.** 1788 Va.Acts (12 Hen.) 780.

**9.** 1789 Va.Acts (13 Hen.) 17, 19–20. Virginia no longer has a border along the Ohio, as the Union government severed West Virginia from

Virginia during the War Between the States. *See* An Act for the Admission of the State of "West Virginia" into the Union, 12 Stat. 633 (1862), *effective upon* Proclamation No. 2, *reprinted in* Acts of Cong. 1863–64, Appendix, at ii.

**10.** 3 Stat. 289 (1816).

prohibits Indiana from exercising the full extent of that power.

I.C. 35–41–1–1(a) provides:

A person may be convicted under Indiana law of an offense if:

(1) either the conduct that is an element of the offense, the result that is an element, or both, occur in Indiana.

In order for the State of Indiana to prosecute Benham, the definition of "in Indiana" must extend to Indiana's jurisdictional boundaries, not just to Indiana's territorial boundaries.

 Courts must resolve ambiguities in penal statutes against the State. *Spangler v. State* (1993), Ind., 607 N.E.2d 720, 723. A particular statute must itself impose a penalty or a forfeiture to be considered "penal." *See Carson v. State* (1979), 271 Ind. 203, 205, 391 N.E.2d 600, 602 (only statutory definitions of crimes qualify for the strict construction rule); *Beesley v. State* (1941), 219 Ind. 239, 244, 37 N.E.2d 540, 542. While statutes enumerating the elements of a crime are penal, *see Spangler* at 722–23, a statute enumerating jurisdiction is not. We must therefore look to other rules of construction to ascertain the meaning of "in Indiana."

 When possible, Indiana courts interpret statutes to reconcile them with our constitution and each other. *Matter of Public Law No. 154–1990* (1990), Ind., 561 N.E.2d 791, 792; *Northern Ind. Bank and Trust Co. v. State Bd. of Finance of Ind.* (1983), Ind., 457 N.E.2d 527, 532 (courts presume legislature did not intend to enact a nullity). When construing statutes together, a more detailed and specific statute prevails over a more general statute. *State ex rel. Hatcher v. Lake Superior Court, Rm. 3* (1986), Ind., 500 N.E.2d 737, 739.

Although I.C. 35–41–1–1 does not define "in Indiana," the Indiana Constitution, art. XIV, § 2 and the criminal venue statute,

IND.CODE. 35–32–2–1 (1986), provide invaluable assistance.

Art. XIV, § 2 defines Indiana's legal jurisdiction as extending to the southern edge of the Ohio river, which is south of the north shore low water mark of 1792. Therefore, our constitution contemplates Indiana's executive, legislative, and judicial power extending into Kentucky territory on the Ohio River.

Indiana's venue statute also contemplates Indiana's jurisdiction extending into Kentucky and Illinois territory. I.C. 35–32–2–1(g) provides:

If an offense is committed on the portions of the Ohio or Wabash Rivers where they form a part of the boundaries of this state, trial may be had in the county that is adjacent to the river and whose boundaries, if projected across the river, would include the place where the offense was committed.

Benham suggests that the venue statute only contemplates jurisdiction over crimes on the Ohio River within Indiana territory. Under his view, to determine venue, we would project lines from the current north shore of the Ohio to the north shore low water mark of 1792.

Benham's interpretation, however, would render I.C. 35–32–2–1(g) a nullity. The boundaries of Indiana border counties are coterminous with the boundaries of Indiana.[11] Thus, there would be absolutely nothing to project across the river, since those boundaries already extend to the 1792 north shore low water mark. Furthermore, since the portion of the Ohio River north of the low water mark lies within the State of Indiana, any given point thereon lies within a county in Indiana. Other portions of the venue statute would determine venue for any crime committed on the Ohio river in Indiana territory. *See, e.g.,* I.C. 35–32–2–1(a) ("Criminal actions shall be tried in the county where the offense was committed...."). To read I.C. 35–32–2–1(g) to extend only to offenses

---

**11.** The Enabling Act describes the Ohio river as Indiana's southern border, 3 Stat. at 289, and each of the counties along the Ohio river has as a border along or following the Ohio river. *See, e.g.,* 1814 Ind.Acts 30 (Switzerland County).

within Indiana territory would render that entire subsection meaningless.

■ In order to give effect to I.C. 35–32–2–1(g), we must necessarily interpret "in Indiana" for purposes of 35–41–1–1(a)(1) to mean "in Indiana territory, and in portions of the Wabash and Ohio Rivers over which Indiana exercises concurrent jurisdiction." Indiana may therefore enforce its laws south of the 1792 low water mark on the Ohio River.

■ This result comports with prior decisions of our supreme court.[12] *Carlisle v. State* (1869), 32 Ind. 55, in fact, is controlling here. In that case, Indiana charged Carlisle with murder for an act which occurred in Kentucky on the Ohio River across from Spencer County. The *Carlisle* indictment charged that the offense occurred in Spencer County, although it actually occurred on the Ohio River in Kentucky, across from Spencer County. Here, the informations charging reckless homicide, involuntary manslaughter, and operating a watercraft while intoxicated charge that the offenses occurred in Switzerland County, while the offenses allegedly occurred in Kentucky, across from Switzerland County. Such variance was not fatal in *Carlisle,* and is not fatal here. Indiana had jurisdiction over the crime in *Carlisle,* and venue was proper in Spencer County. Likewise, Indiana has jurisdiction over Benham's offenses, and venue is proper in Switzerland County.

*Carlisle* does not stand alone. *See Welsh v. State* (1890), 126 Ind. 71, 25 N.E. 883 (Indiana may prohibit the sale of intoxicating beverages on parts of the Ohio River in Kentucky); *Sherlock et al. v. Alling, Adm'r* (1873), 44 Ind. 184, *aff'd,* 93 U.S. 99, 23 L.Ed. 819 (wrongful death action). "[T]he criminal laws of the State extend to, and are in force on the Ohio river where such river constitutes the southern boundary of the State." *Welsh,* 126 Ind. at 75, 25 N.E. at 884.

Benham further argues that because the boundaries between Indiana and Kentucky were not fixed until *Indiana v. Kentucky* (1896), 163 U.S. 520, 16 S.Ct. 1162, 41 L.Ed. 250 (*Indiana II*), the above-cited cases in which Indiana properly exercised jurisdiction prior to *Indiana II* in the Kentucky part of the Ohio are no longer valid.

From at least the time of *Handly's Lessee v. Anthony* (1820), 18 U.S. (5 Wheat.) 374, 5 L.Ed. 113, it has been clear that the north shore low water mark provided the boundary between Indiana and Kentucky. The border, however, fell and rose with the ebb and flow of the Ohio River. For a brief time, Indiana was fortunate in this respect, for what was once Green River Island avulsed unto the Indiana mainland. This led to the litigation in *Indiana v. Kentucky* (1890), 136 U.S. 479, 10 S.Ct. 1051, 34 L.Ed. 329 (*Indiana I*), where the tide turned against Indiana, and the United States Supreme Court determined that it was the 1792 low water mark that provided the border. The United States Supreme Court adopted a survey of the 1792 low water mark in *Indiana II.*

Recently, Kentucky litigated the exact border location with Indiana and Ohio. Each of these cases explicitly reaffirmed the 1792 low water mark border and concurrent jurisdiction over the Ohio. *Indiana III,* 474 U.S. at 1, 2, 106 S.Ct. at 304, 88 L.Ed.2d at 1; *Ohio v. Kentucky* (1985), 471 U.S. 153, 153, 105 S.Ct. 2011, 2011, 85 L.Ed.2d 119, 119. Therefore, it is unreasonable to view pre–1896 cases any differently than post–1896 cases.

Benham next argues Indiana decisions subsequent to *Indiana II* limit Indiana's jurisdiction, citing *Green v. State* (1953), 232 Ind. 596, 600, 115 N.E.2d 211, 214, *Watts v. Evansville R.R. Co.* (1919), Ind. App., 123 N.E. 709, 710 (not reported in Ind.App.), *rev'd in part,* 191 Ind. 27, 129 N.E. 315, and *Chicago's Last Dept. Store v. Indiana Alcoholic Beverage Comm'n* (N.D.Ind.1958), 161 F.Supp. 1, 4. Benham's reliance on these cases must fail

---

**12.** We also note that this result comports with the long-held rule that where a statute is ambiguous, Indiana courts construe that statute

against derogation of sovereignty. *Central Union Telephone Co. v. Indianapolis Telephone Co.,* (1920), 189 Ind. 210, 224, 126 N.E. 628, 633.

because when read in their entirety these cases recognize concurrent jurisdiction on the Ohio River. Moreover, as recently as 1985, the United States Supreme Court has reaffirmed Indiana's concurrent jurisdiction over the Ohio River. *Indiana III*, 474 U.S. at 2, 106 S.Ct. at 304, 88 L.Ed.2d at 1.

Construing I.C. 35–41–1–1(a)(1) together with I.C. 35–32–2–1(g), we hold that Indiana may enforce its criminal law on the Ohio River south of the 1792 north shore low water mark to the Kentucky shore.

### CONCLUSION

Indiana may enforce its laws on the Ohio River from the Indiana shore to the Kentucky shore. The State concedes that the law does not extend this jurisdiction into Craig's Creek. If the State cannot prove beyond a reasonable doubt that Benham committed the alleged offenses on the Ohio River, and not on Craig's Creek, Indiana may not penalize him for those offenses. *See McKinney*, at 863. This, however, is an issue of fact for the jury. *Id.* The trial court correctly denied Benham's motion to dismiss.

Judgment affirmed.

ROBERTSON and NAJAM, JJ., concur.